PAUL BILLINGS v. JOSEPH HARRIS COMPANY, INC.

No. 50

(Filed 14 July 1976)

Agriculture § 9.5; Uniform Commercial Code § 15— disease bearing seed purchased — disclaimer and limitation clause of seller effective to prevent liability

    G.S. 25-2-316 providing for exclusion or modification of warranties is *not in conflict* with the N. C. Seed Law, and it clearly permits a seller of seed, just as a seller of other merchandise, to incorporate in his contract a disclaimer of any warranty of merchantability or of fitness for purpose, provided the language of the disclaimer mentions merchantability and the disclaimer is conspicuously written; therefore, defendant's disclaimer and limitation clause on a cabbage seed purchase order and on the outside of the package in which the seeds were shipped which was conspicuous and mentioned merchantability was effective to avoid liability of defendant for disease bearing seed sold to plaintiff.

On *certiorari* to the Court of Appeals to review its decision, reported in 27 N.C. App. 689, 220 S.E. 2d 361, affirming partial summary judgment in favor of the defendant, entered by *Wood, J.,* at the 14 April 1975 Session of ALLEGHANY.

The plaintiff, a farmer in Alleghany County, brought this action against the defendant, a seed merchant having its principal

Billings v. Harris Co.

place of business in Rochester, New York. The action was removed on the ground of diversity of citizenship to the United States District Court for the Middle District of North Carolina. In that court the defendant moved for summary judgment. Hearing the matter on the pleadings, affidavits, evidence, briefs and oral argument, United States District Judge Ward determined that the United States District Court was without jurisdiction for the reason that "the plaintiff cannot, to a legal certainty, recover in excess of $10,000, exclusive of interest and costs," and ordered the case remanded to the Superior Court of Alleghany County.

In the Superior Court, the defendant moved for summary judgment of dismissal, alleging the plaintiff's claims are *res judicata* by reason of the judgment of the United States District Court and that there is no genuine issue as to any material fact and the defendant is entitled to summary judgment for failure of the complaint to state a claim upon which relief can be granted. The Superior Court heard this motion upon the record compiled in the United States District Court, made findings of fact, drew conclusions of law and adjudged "that partial Summary Judgment be and it is hereby entered against plaintiff and his claim is hereby dismissed except as to any claim he might have based upon defendant's express warranty that its seeds conform to the label descriptions as required by Federal and State Seed Laws, and in any event defendant's liability thereon shall be limited to the maximum amount of $440.00."

The complaint alleges in substance: The plaintiff, a farmer, grows cabbage commercially; he ordered from the defendant, through its salesman, a specified variety of cabbage seed sufficient to plant 50 acres; the defendant shipped cabbage seed to the plaintiff, who planted them in his seed bed and from there transplanted the cabbage plants to his field, using the normal and accustomed methods for planting, transplanting and caring for the seed, plants and growing crop; after transplanting, the growing plants were found to be infected with a disease called "Black Leg" and all of them rotted before harvest time by reason of such disease; "Black Leg" is caused by a fungus which is seed-borne; because of the disease of the plants the plaintiff experienced a total crop failure whereby he was damaged in the amount of $50,000; the defendant knew or should have known the purpose for which the seed were purchased—the growing of cabbage commercially.

The answer of the defendant admits that the plaintiff purchased from the defendant 23 pounds of specified varieties of cabbage seed for a total price of $440.00 plus shipping cost. The answer further alleges that the written order, signed by the plaintiff, constituting the contract of sale, specifically provided:

"Notice to Buyer: Joseph Harris Company, Inc. warrants that seeds and plants it sells will conform to the label description as required under State and Federal seed laws. It makes no warranties, express or implied, of merchantability, fitness for purpose, or otherwise which would extend beyond such descriptions, and in any event its liability for breach of any warranty or contract with respect to such seeds or plants is limited to the purchase price of such seeds or plants.

"Joseph Harris Company, Inc. further limits to the purchase price any liability of any kind on account of any negligence whatsoever on its part with respect to such seeds or plants.

"By acceptance of the seeds or plants herein described, the buyer acknowledges that the limitations and disclaimers herein described are conditions of sale and that they constitute the entire agreement between the parties regarding warranty or any other liability."

The answer further alleges that this provision appeared legibly on the outside of the package in which the seed were shipped to the plaintiff. The answer pleads this contract provision in bar of the plaintiff's right to recover anything and further pleads it in limitation of the plaintiff's recovery, if any, to the sum of $440.00.

In answer to interrogatories submitted to him by the defendant, the plaintiff admitted that his copy of the order placed with the defendant contained the above quoted provisions set forth in the defendant's answer. He further acknowledged in answering such interrogatories that the seed shipped to him were of the variety ordered.

The printed order blank upon which the plaintiff's order for cabbage seed was submitted to the defendant bears prominently upon its face, immediately below the name and address of the plaintiff, the "notice to buyer" set forth in the defend-

ant's answer, the negation of warranties and the limitation of liability printed in capital letters throughout.

An affidavit of the defendant's president, submitted in support of its motion for summary judgment, states: Seeds sold by the defendant to the plaintiff were purchased by the defendant from Ferry Morse Seed Company of California. The 20 pounds so sold to the plaintiff were part of a lot of 150 pounds purchased by the defendant from the Ferry Morse Seed Company, which lot was, in turn, part of a quantity of 7,000 pounds sold by Ferry Morse. The defendant has had no indication of any disease discovered in any plants produced from seed contained in the 7,000 pound lot sold by Ferry Morse, all of which seed were grown in California. (Seed grown in California are unlikely to be infected with "Black Leg.")

The affidavit of Dr. Charles W. Averre, offered by the defendant in support of the motion for summary judgment, shows that Dr. Averre is the Extension Plant Pathologist of North Carolina State University, that he visited the plaintiff's cabbage field while the crop in question was growing thereon and found the crop to be a total loss due to "Black Leg," which is caused by a fungus known to persist in the soil and to be seedborne. The disease was reported "fairly prevalent that year" in the United States and was "widespread in Alleghany County." Dr. Averre was unable to give an opinion as to which of specified possible origins of the disease was the source of the fungus which caused the loss of the plaintiff's crop.

The 1953 Year Book of Agriculture, attached as an exhibit to the plaintiff's deposition, shows that the fungus which produces "Black Leg" subsists on infected plant debris for 1 or 2 years in the soil and in infected seed.

In opposition to the defendant's motion for summary judgment, the plaintiff introduced the affidavit of Roger Murdoch, Alleghany County Agricultural Agent. This was to the effect that he inspected the plaintiff's crop and found the 50 acre field "totally infested" with Black Leg, except for two or three rows on the edge of the field which rows had been planted with plants from a source other than the plaintiff's plant bed (i.e., a source other than the seed sold by the defendant). These two or three rows were not infected with the disease. The plaintiff's plant bed "was totally infested with the disease." This plant bed was on newly cleared, high ground and cabbage had never

previously been planted thereon or nearby, so that "it was not possible for there to have been any run-off across the land contaminating the plant bed from other lands upon which cabbage had been grown." In the opinion of Mr. Murdoch, "Black Leg" is the result of contaminated seed.

The Superior Court found as a fact that "both defendant's invoice and seed package" contained the above quoted disclaimer of warranty and limitation of liability which were "conspicuously placed thereon." The court concluded that the complaint, construed in the light most favorable to the plaintiff, states a claim for relief based upon breach of warranty but upon no other legal theory, that the disclaimer by the defendant was conspicuous, was communicated to the plaintiff and formed part of the contract, that, thereby, the defendant had effectively limited its liability for breach of warranty to the amount of the purchase price of the seed and, therefore, "to a legal certainty, plaintiff cannot recover in excess of $440.00 from defendant in this action." Accordingly, the Superior Court entered judgment as above stated.

In the statement of facts preceding the opinion of the Court of Appeals, it is said that the plaintiff admitted signing the purchase order. No such admission appears in the record. Perhaps the admission was made in the course of the oral argument in the Court of Appeals. The record does show the plaintiff signed his answers to the defendant's interrogatories and signed a verification of his complaint. His name appears on the order, in close proximity to the above quoted limitation of liability provision, in a handwriting which appears to be the same as that in the signatures to the answers to the interrogatories and the verification of the complaint.

In its opinion the Court of Appeals said:

"While defendant argues that the order of the federal court, from which no appeal was taken, is *res judicata* as to the issues presented on this appeal, we do not decide that question. We affirm the judgment appealed from on the ground that defendant, by the disclaimer set forth on the order blank *which plaintiff signed,* limited its maximum liability to return of the purchase price of the seed. (Emphasis added.)

*    *    *

"Plaintiff further contends that he ought not [to] be bound by the provisions of the Uniform Commercial Code as he is illiterate. *It is admitted that he signed the order form.* The law appears well settled in this State that, in the absence of fraud, duress or undue advantage tending to mislead a party, when a person affixes his signature to a document he is bound thereby. [Citations omitted.] There was no showing of fraud, duress or undue advantage tending to mislead plaintiff." (Emphasis added.)

*McElwee, Hall & McElwee by John E. Hall and Arnold L. Young for plaintiff.*

*Hudson, Petree, Stockton, Stockton & Robinson by Norwood Robinson, George L. Little, Jr., and Steven E. Philo for defendant.*

LAKE, Justice.

The plaintiff relies upon our decision in *Gore v. Ball, Inc.,* 279 N.C. 192, 182 S.E. 2d 389 (1971). That case is distinguishable from the present case for two reasons. First, there the defendant delivered the wrong kind of seed, whereas, in the present case, the plaintiff admits that he received the exact kind of seed he ordered. Thus, in the present case, there was no violation of the North Carolina Seed Law through false labeling of seed. In the Gore case, we held that a provision in the contract limiting the seller's liability for delivering falsely labeled seed to the purchase price of the seed was contrary to the public policy of this State as declared in the North Carolina Seed Law and was, therefore, invalid. That question is not involved in the present litigation. Second, as we expressly stated in the Gore case, the transaction there having occurred prior to the effective date of the Uniform Commercial Code in North Carolina, the provisions of that Act were not applicable to the Gore case. G.S. 25-10-101. Here the purchase of seed out of which the present litigation arose occurred after the Uniform Commercial Code took effect in this State. Thus the provisions of the Code do apply to this case.

The disclaimer of warranty clause, with which we are presently concerned, provides expressly that the seller makes no warranty of merchantability and no warranty of fitness for purpose and no other warranty except a warranty that the

seed conform to the label descriptions required by Federal and State Seed Laws. Thus, it excludes any warranty against the presence in the seed of a disease.

The printed order blank further provides that the seller's liability for breach of any warranty (i.e., warranty of conformity to the label description) is limited to the return of the purchase price. This latter provision is the one which we held contrary to the public policy· of the State as declared in the North Carolina Seed Law in *Gore v. Ball, Inc., supra*. It is not involved in this action.

The Uniform Commercial Code, which took effect in this State on 30 June 1967, provides in G.S. 25-2-316:

> "*Exclusion or modification of warranties.*— (1) Words or conduct relevant to the creation of an express warranty and words or conduct tending to negate or limit warranty shall be construed wherever reasonable as consistent with each other; but subject to the provisions of this article on parol or extrinsic evidence ·(§ 25-2-202) negation or limitation is inoperative to the extent that such construction is unreasonable.

> "(2) Subject to subsection (3), to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability ˙and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient if it states, for example, that 'There are no warranties which extend beyond ˙the ˙ description on the face hereof.'

*    *    *

> (4) Remedies for breach of warranty can be limited in accórdance with the provisions of this article on liquidation or limitation of damages and on contractual modification of remedy (§§ 25-2-718 and 25-2-719)."

This statute is not in conflict with the provision of the North Carolina Seed Law referred to in *Gore v. Ball, Inc.; supra.* It clearly permits a⸴ seller of seed, just as a seller of other merchandise, to incorporate in his contract a disclaimer of any warranty of merchantability or of fitness for purpose provided he

complies with the conditions stated in subsection (2). In the present case, the disclaimer clause complies with those conditions.

In G.S. 25-2-719 the Uniform Commercial Code provides:

"*Contractual modification or limitation of remedy.*— (1) *Subject to* the provisions of subsections (2) and (3) of this section and of *the preceding section* [25-2-718] on liquidation and limitation of damages,

"(a) the agreement may provide for remedies in addition to or in substitution for those provided in this article and may limit or alter the measure of damages recoverable under this article, *as by limiting the buyer's remedies to return of the goods and repayment of the price* or to repair and replacement of nonconforming goods or parts; and

"(b) resort to a remedy as provided is optional unless the remedy is expressly agreed to be exclusive, in which case it is the sole remedy.

"(2) Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this chapter.

"(3) Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable *but limitation of damages where the loss is commercial is not.*" (Emphasis added.)

In G.S. 25-2-718, referred to in the above quoted section, the Uniform Commercial Code provides:

"*Liquidation or limitation of damages; deposits.*—(1) Damages for breach by either party may be liquidated in the agreement but *only at an amount which is reasonable in the light of the anticipated or actual harm caused by the breach,* the difficulties of proof of loss, and the inconvenience or nonfeasibility of otherwise obtaining an adequate remedy. A term fixing unreasonably large liquidated damages is void as a penalty. * * * " (Emphasis added.)

Since in the present case we do not have any breach by the seller of a warranty of conformity to label, i.e., the type of

seed ordered was actually delivered, we express no opinion as to whether, where there has been such a breach, a limitation of the buyer to the recovery of the purchase price is "reasonable in the light of the anticipated or actual harm caused by the breach."

We note that the official comment to G.S. 25-2-719 by the committee which drafted the Uniform Commercial Code states:

> "Under this section parties are left free to shape their remedies to their particular requirements and *reasonable* agreements limiting or modifying remedies are to be given effect.

> "However, it is of the very essence of a sales contract that at least minimum *adequate* remedies be available. If the parties intend to conclude a contract for sale within this Article they must accept the legal consequence that there be at least a fair quantum of remedy for breach of the obligations or duties outlined in the contract. Thus any clause purporting to modify or limit the remedial provisions of this Article *in an unconscionable manner* is subject to deletion and in that event the remedies made available by this Article are applicable as if the stricken clause had never existed. * * * " (Emphasis added.)

For the reasons hereinabove stated, we find no error in the judgment of the Superior Court prejudicial to the plaintiff, and the decision of the Court of Appeals affirming that judgment is, therefore, affirmed.

Affirmed.