**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

REPUBLIC INDUSTRIES, INCORPORATED,
Plaintiff-Appellant,

v.                                                          No. 97-2236

ATLANTIC VENEER CORPORATION,
Defendant-Appellee.

Appeal from the United States District Court
for the Eastern District of North Carolina, at Greenville.
Malcolm J. Howard, District Judge.
(CA-96-164-4-H)

Argued: October 30, 1998

Decided: January 11, 1999

Before MURNAGHAN, HAMILTON, and MICHAEL,
Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Don Stokes, STOKES LAW OFFICE, Marshall, Texas,
for Appellant. L. Patten Mason, MASON & MASON, P.A., More-
head City, North Carolina, for Appellee. **ON BRIEF:** P. Wayne Rob-
bins, ROBBINS, MAY & RICH, L.L.P., Pinehurst, North Carolina,
for Appellant.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Appellant, Republic Industries (Republic), is a Texas cabinet manufacturer who contracted to purchase maple-veneer plywood from Appellee, Atlantic Veneer Corporation (AVC) of North Carolina. The parties' contract contained a choice of law clause dictating that disputes arising out of the parties' agreement would be governed by the laws of North Carolina.

After Republic used a shipment of AVC's plywood to manufacture kitchen cabinets, the plywood warped, causing economic damage to Republic. As a result, Republic brought suit in the United States District Court for the Eastern District of Texas, pursuant to the Texas Deceptive Trade Practices Act, Tex. Bus. & Com. Code§ 17.41 et seq., seeking monetary damages for a breach of the implied warranties of merchantability and fitness for a particular purpose. The case was transferred to the United States District Court for the Eastern District of North Carolina. Thereafter, the district court determined that the parties' choice of law agreement was controlling and, applying North Carolina law, granted AVC's motion for summary judgment. Republic now appeals.

I.

Since approximately 1990, Republic purchased plywood in truck-load lots from AVC. To place its orders, Republic would telephone AVC, who would then prepare and send Republic an order acknowledgment and an invoice, both of which contained the following language on the front side of the form: "THIS SALE IS SUBJECT TO ALL TERMS AND CONDITIONS CONTAINED ON THE REVERSE SIDE." The conditions of sale on the reverse side of the forms contained language which disclaimed all warranties except those specifically reserved by the parties' contract and a provision naming North Carolina as the applicable choice of forum and law.

2

Republic used a shipment of plywood it received from AVC to build kitchen cabinets for customers in New York. Shortly after installation, the plywood warped, causing economic damage to Republic. As a result, Republic commenced this suit against AVC in the United States District Court for the Eastern District of Texas, alleging a breach of the implied warranties of merchantability and fitness for a particular purpose. The district court found that the choice of forum provisions were valid and transferred the case from Texas to the Eastern District of North Carolina. The North Carolina court concluded that the choice of law provisions were valid and, applying North Carolina law, granted summary judgment to AVC on the ground that the disclaimer of warranties in the contract precluded Republic from recovering. This appeal followed.

II.

Republic contends that the district court erred in granting summary judgment to AVC. According to Republic, the court incorrectly concluded that AVC's choice of law agreement, which provided that North Carolina law would apply to disputes under the contract, was controlling. We review the district court's decision to grant summary judgment de novo. See M&M Med. Supplies & Servs. v. Pleasant Valley Hosp., Inc., 981 F.2d 160, 163 (4th Cir. 1992) (en banc). Pursuant to Fed. R. Civ. P. 56(c), summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See M&M Med. Supplies & Servs., 981 F.2d at 162-63. With that standard in mind, we now consider the merits of Republic's contention.

A federal court exercising diversity jurisdiction, as in the present case, must apply the substantive law of the state in which it sits, see Erie R.R. v. Tompkins, 304 U.S. 64, 78-79 (1938), which includes applying the forum state's choice of law rules, see Klaxon Co. v. Stentor Elec. Mfg. Co, Inc., 313 U.S. 487, 496 (1941). In the present case, Republic does not challenge, on appeal, the transfer of its case from the Eastern District of Texas to the Eastern District of North Carolina. Therefore, as a threshold matter, it is undisputed that North Carolina is the forum state for purposes of determining the applicable law.

In North Carolina, as in most other states, parties to a contract may agree in advance as to the choice of law that will govern any disputes

3

that arise between them. <u>See Perkins v. CCH Computax, Inc.</u>, 333 N.C. 140, 145 n.1, 146 (1992) (noting that the state Supreme Court has held choice of law provisions to be valid and enforceable in North Carolina); <u>see also Allen v. Lloyd's of London</u>, 94 F.3d 923, 928 (4th Cir. 1996) (noting that "the [United States] Supreme Court has consistently accorded choice of forum and choice of law provisions presumptive validity"). Section 105 of the North Carolina Commercial Code provides in pertinent part that "... when a transaction bears a reasonable relation to this State and also to another state or nation the parties may agree that the law either of this State or of such other state or nation shall govern their rights and duties ...." N.C. Gen. Stat. § 25-1-105 (1995). Thus, as a general matter, choice of law clauses are enforceable in North Carolina.

In the case at bar, the parties' contract contained a clause delineating the choice of applicable law and forum. The relevant clause provides:

> GOVERNING LAW AND VENUE. The provisions of the Uniform Commercial Code in effect in the State of North Carolina as of the date of this order shall govern all aspects of this agreement except where in conflict with the terms and conditions contained herein, in which event these conditions shall control. This agreement, including its validity, interpretation, performance, operation and enforcement shall be governed by the laws of the State of North Carolina. Buyer submits to the jurisdiction of the state and federal courts of the State of North Carolina for the resolution of any legal action arising out of this agreement and agrees that venue for such legal action shall be exclusively in ... the Eastern District of North Carolina for any action instituted within the Federal Court system.

Although the language of the parties' contract would ordinarily leave little doubt as to the appropriate choice of law, the issue is complicated by the fact that Republic's suit against AVC was brought pursuant to the Texas Deceptive Trade Practices Act (DTPA). <u>See</u> Tex. Bus. & Comm. Code § 17.41 <u>et seq.</u> The DTPA creates a cause of action for damages on behalf of consumers who, <u>inter alia</u>, suffer economic damage or emotional anguish as a result of a "breach of an

4

express or implied warranty." See Tex. Bus. & Comm. Code § 17.5(a)(2). It is therefore necessary to determine whether the nature of a claim under the DTPA has any effect on the parties' choice of law agreement.

In ITCO Corp. v. Michelin Tire Corp., 722 F.2d 42 (4th Cir. 1983), we held that a contractual choice of law clause designating New York law as governing was inapplicable to a claim for damages arising under North Carolina's Unfair Trade Practice Act (UTPA), N.C. Gen. Stat. § 75-1.1. The UTPA, which is closely analogous to Texas' DTPA, provides consumers with a private cause of action for damages arising from any "[u]nfair methods of competition ..., and unfair or deceptive acts or practices in or affecting commerce ...." ITCO, 722 F.2d at 47. Because the plaintiff's suit in ITCO was brought pursuant to the UTPA, we were left to determine whether the suit would be governed by the parties' contractual choice of law provision. We concluded that because "[t]he nature of the liability ... imposed by the statute is ex delicto, not ex contractu , ... [n]o issue of contractual construction, interpretation, or enforceability is raised ...." Id. at 49 n.11. We, therefore, held that "North Carolina's courts would apply N.C. Gen. Stat. § 75-1.1 to the facts presented ... without regard to the presence of the contractual choice of law provision." Id.; see also United Dominion Industries, Inc. v. Overhead Door Corp., 762 F.Supp. 126, 128 (W.D.N.C. 1991) (citing ITCO, the court noted that "[t]he contractual provision here may govern the choice of laws as to the interpretation and construction of the contract; however it does not provide the applicable law for a claim based on unfair and deceptive acts.").

Unlike ITCO and its progeny, however, in the instant case, Republic contractually and expressly waived any action for breach of express or implied warranties beyond those contained in the agreement under the "conditions of sale." The waiver reads:

> All implied warranties of merchantability and all implied warranties of fitness for a particular purpose or use are specifically excluded. There are no warranties, expressed or implied, which extend beyond the written warranties contained herein.

Since the Court must determine the validity and enforceability of the contractual waiver, the nature of liability is ex contractu and, thus,

5

subject to the parties' choice of law agreement. The fact that the claim is brought under the DTPA has no effect on the parties' choice of law. In accordance with the terms of the agreement, the law of North Carolina should apply.

North Carolina law allows the type of waiver contained in the agreement. Under state law, implied warranties of merchantability and fitness may be excluded or modified, if done in accordance with the provisions of N.C. Gen. Stat. § 25-2-316. See Angola Farm Supply and Equipment Co. v. FMC Corp., 59 N.C. App. 272, 277 (1982). Section 25-2-316(2) of the General Statutes of North Carolina states in pertinent part:

> (2) Subject to subsection (3), to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient if it states, for example, that "There are no warranties which extend beyond the description on the face hereof." N.C. Gen. Stat. § 25-2-316(2) (1995).

Section § 25-1-201(10) defines "conspicuous" as follows:

> A term or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it. A printed heading in capitals (as: NONNE-GOTIABLE BILL OF LADING) is conspicuous. Language in the body of a form is "conspicuous" if it is larger or other contrasting type or color. But in a telegram any stated term is "conspicuous." Whether a term or clause is"conspicuous" or not is for decision by the court. N.C. Gen. Stat. § 25-1-201(10) (1995).

So, as long as the waiver satisfies the requirements of § 25-2-316 and § 25-1-201(10), it is permissible.

As further support, the North Carolina Supreme Court has held that parties may, by contract, exclude implied warranties of merchanta-

6

bility and fitness for a particular purpose. In Billings v. Joseph Harris Co., Inc., the state Supreme Court, addressing a claim of breach of warranty against a seed dealer, upheld a disclaimer of warranties clause contained in the parties' contract. 290 N.C. 502, 508-509 (1976). The contract of sale in Billings provided: "It makes no warranties, express or implied, of merchantability, fitness for purpose, or otherwise which would extend beyond such descriptions, and in any event its liability for breach of any warranty or contract with respect to such seeds or plants is limited to the purchase price of such seeds or plants." 290 N.C. at 504. Citing § 25-2-316, the court stated: "[The disclaimer language] clearly permits a seller of seed, just as a seller of other merchandise, to incorporate in his contract a disclaimer of any warranty of merchantability or of fitness for purpose provided he complies with the conditions stated in subsection (2) [of § 25-2-316]." 290 N.C. at 508-509.

Similarly, in Angola Farm Supply and Equipment Co. v. FMC Corp., the North Carolina Court of Appeals held that language in the parties' contract was sufficient to exclude the implied warranties of merchantability and fitness for a particular purpose. 59 N.C. App. at 277-278. In Angola Farm, the contract provided that its products would be "free from defects in material and workmanship for a period of six (6) months from the date placed in service or twelve (12) months from the date of factory shipment, whichever occurs first." 59 N.C. App. at 273. The warranty further provided:"This warranty is in lieu of all other warranties, express or implied, including those of merchantability and fitness of any product for a particular purpose not expressly set forth herein." 59 N.C. App. at 273. The court concluded that the disclaimer of warranty, written in bold and capitalized print, satisfied the requirements of § 25-2-316(2). Angola Farm, 59 N.C. App. at 506; see also Ace, Inc. v. Maynard, 108 N.C. App. 241, 248-249 (1992) (enforcing agreement that contained a disclaimer of warranties clause), review denied, 333 N.C. 574 (1993).

We, therefore, conclude that the waiver language contained in the contract between Republic and AVC is permissible under North Carolina law. On the face of the invoice, there is plainly visible, capitalized print indicating that the sale was subject to the terms and conditions contained on the reverse side. The disclaimer on the reverse side of the invoice is in capitalized type and is larger than the

7

surrounding text, clearly satisfying the definition of "conspicuous" provided above. <u>See generally Tyson v. Ciba-Geigy Corp.</u>, 82 N.C. App. 626, 631 (1986) (determining that text in darker and larger type than other language on label was "conspicuous").

Republic had ample opportunity to read the back of the invoice and object to any terms it found unconscionable or unfair. Republic never objected, however. Rather, over the course of nearly six years, Repub-

lic continued to order plywood from AVC and received, with each shipment, an invoice containing the same terms and conditions outlined above. <u>See generally</u> N.C. Gen. Stat.§ 25-2-207(1) (1995) ("... a written confirmation which is sent within a reasonable time operates

as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms."). If

a self-described, "illiterate" farmer is obliged to comply with a disclaimer of warranties, as was the case in <u>Billings</u>, 290 N.C. at 507, surely a sophisticated business enterprise like Republic must be pre-

vented from avoiding the terms of its agreement with AVC. Barring fraud, of which there is no evidence here,* we are obliged to enforce the contractual provisions agreed upon by the parties.

III.

Accordingly, we conclude that the district court's grant of summary judgment in favor of Appellee-Defendant was proper. AVC is entitled to judgment as a matter of law. We affirm.

<u>AFFIRMED</u>
_____

*Under North Carolina law, substantial evidence of fraud consists of (1) false representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party. <u>Ace</u>, 108 N.C. App. at 249.

8