IN THE SUPREME COURT OF NORTH CAROLINA

No. 187PA16

Filed 18 August 2017

KORNEGAY FAMILY FARMS LLC

v.

CROSS CREEK SEED, INC.

On writ of certiorari pursuant to N.C.G.S. § 7A-32(b) to review an order and opinion dated 20 April 2016 entered by Judge James L. Gale, Chief Special Superior Court Judge for Complex Business Cases appointed by the Chief Justice pursuant to N.C.G.S. § 7A-45.4, in Superior Court, Johnston County, denying defendant's motions for partial summary judgment. Heard in the Supreme Court on 10 April 2017.

*Ellis & Parker PLLC, by L. Neal Ellis, Jr.; and Jolly Williamson & Williamson, by John P. Williamson, Jr., for plaintiff-appellees.*

*Poyner Spruill LLP, by Steven B. Epstein, Andrew H. Erteschik, and Saad Gul, for defendant-appellant.*

*Pinto Coates Kyre & Bowers, PLLC, by Jon Ward; and Michael W. Patrick for North Carolina Advocates for Justice, amicus curiae.*

*Smith Moore Leatherwood LLP, by Matthew Nis Leerberg and Kip D. Nelson, for North Carolina Association of Defense Attorneys, amicus curiae.*

*H. Julian Philpott, Jr. and Phillip J. Parker, Jr. for North Carolina Farm Bureau Federation, Inc., Tobacco Growers Association of North Carolina, Inc., North Carolina Soybean Producers Association, North Carolina Peanut Growers Association, and Carolinas Cotton Growers Cooperative, Inc., amici curiae.*

JACKSON, Justice.

In this case we consider whether defendant Cross Creek Seed, Inc. may enforce several limitation of remedies clauses pursuant to Article 2 of the Uniform Commercial Code (UCC) as codified in N.C.G.S. § 25-2-719(1)(a) against Kornegay Family Farms, LLC and a number of other commercial farmers (plaintiffs) in defense of lawsuits premised on defendant's distribution of allegedly mislabeled tobacco seed. Because it is the policy of this State, as expressed by the General Assembly in the North Carolina Seed Law of 1963 (Seed Law), *see* N.C.G.S. §§ 106-277 to -277.34 (2015), to protect farmers from the potentially devastating consequences of planting mislabeled seed, we conclude that defendant's limitation of remedies clauses are unenforceable against plaintiffs. Accordingly, we affirm the North Carolina Business Court's 20 April 2016 order and opinion denying defendant's motions for partial summary judgment.

Defendant is headquartered in Raeford, North Carolina, and is in the business of breeding, developing, and producing tobacco seeds. The eight plaintiffs in this case all are commercial farmers in North Carolina who had purchased one or more of four varieties of defendant's tobacco seed between January and February 2014. Between June and August 2015, each plaintiff filed a separate suit against defendant alleging that defendant had sold them mislabeled, certified tobacco seed for planting. The complaints were filed in the superior courts of six different counties across North Carolina. Plaintiffs complained that "[c]ontrary to the order and the labeling on the containers delivered to [them], a substantial portion of the seed was of an unknown

variety" and not the type or types of certified seed each plaintiff contracted to receive from defendant. Plaintiffs learned that they had not received the correct types of seed after the seeds had been planted and consequently produced "plants which were defective, disease prone, inferior, and unmarketable." Several plaintiffs subsequently filed complaints with the North Carolina Seed Board pursuant to relevant provisions of the Seed Law. *See* N.C.G.S. §§ 106-277.30, -277.34. The Seed Board investigated these complaints and determined that the yields of what it described as "off-type" plants were "consistent with the presence of genetic abnormalities" in the seed. The Seed Board also determined that the yields of "off-type" plants were not "consistent with nutritional deficiencies" nor were they responses to "environmental or agronomic factors" such as chemical injury. Defendant denied selling unknown varieties of tobacco seed to plaintiffs—and most relevant to our review of this case— argued that in accord with the limitation of remedies clause on each container of seed, plaintiffs' alleged damages were "limited to repayment of the purchase price of the seed."

On 7 July 2015, the Chief Justice of the Supreme Court of North Carolina designated the suit by Kornegay Family Farms—the named plaintiff—as a mandatory complex business case, and the matter was subsequently assigned to Chief Special Superior Court Judge for Complex Business Cases James L. Gale. By a consent order signed by Judge Gale on 15 October 2015, the other seven cases were

consolidated in a "Master File" established in conjunction with the case filed by the named plaintiff.

In October and November 2015, defendant filed motions for partial summary judgment against all eight plaintiffs seeking to bar recovery of any damages exceeding the purchase price of the seed. The Business Court heard the motions on 4 February 2016. At the hearing, defendant reiterated its argument that any damages sustained by plaintiffs were limited to the purchase price of the seeds as stated in the limitation of remedies clause printed on the labels affixed to each container of seed. Defendant argued that these limitation of remedies clauses governed the transactions with plaintiffs pursuant to the provision of UCC Article 2 codified at N.C.G.S. § 25-2-719.[1]

On 20 April 2016, the Business Court issued an order and opinion denying all of defendant's motions for partial summary judgment on the grounds that limitation of remedies clauses appearing on the labels of mislabeled seed must fail by virtue of the public policy central to the Seed Law as interpreted and applied by this Court. The Business Court observed that, faced with a set of facts similar to those presented in the instant case, this Court held that a limitation of remedies clause was unenforceable after determining that the Seed Law "has declared the policy of North

---

[1] Section 25-2-719 states that "[c]onsequential damages may be limited or excluded unless the limitation or exclusion is unconscionable." N.C.G.S. § 25-2-719(3) (2015).

Carolina to be one of protecting the farmer from the disastrous consequences of planting seed of one kind, believing he is planting another." *Kornegay Family Farms, LLC v. Cross Creek Seed, Inc.*, No. 15 CVS 1646, 2016 WL 1618272, at *4 (N.C. Super. Ct. Johnston Cty. (Bus. Ct.) Apr. 20, 2016) (quoting *Gore v. George J. Ball, Inc.*, 279 N.C. 192, 208, 182 S.E.2d 389, 398 (1971)). In *Gore* we also referred to a packaging disclaimer similar to the one at issue in this case as a "skeleton warranty." 279 N.C. at 208, 182 S.E. 2d at 398. Finding no definitive renunciation of *Gore* by either this Court or the General Assembly, the Business Court "decline[d] to infer a legislative intent for the UCC to supersede the public policy of the Seed Law in cases involving the sale of mislabeled seed." *Kornegay Family Farms*, 2016 WL 1618272, at *8. Consequently, the Business Court ruled that this Court's decision in *Gore* did not allow defendant to enforce its limitation of remedies clauses against plaintiffs. *Id.* at *9. At the same time, the Business Court recognized that this Court "has not squarely confronted whether a limitation of remedies in a mislabeled-seed case governed by the UCC is enforceable," *id.* at *7, and agreed with all parties that guidance from this Court is needed, *id.* at *8.

On interlocutory appeal from the order of the Business Court denying defendant's motions for partial summary judgment, defendant argues that its limitation of remedies clauses are enforceable pursuant to the UCC and that this Court's prior analysis of the public policy underlying the Seed Law does not apply in this case. We disagree.

The stated purpose of the Seed Law, codified in Chapter 106, Article 31 of the General Statutes, is "to regulate the labeling, possessing for sale, sale and offering or exposing for sale or otherwise providing for planting purposes of agricultural seeds and vegetable seeds; to prevent misrepresentation thereof; and for other purposes." N.C.G.S. § 106-277. Accordingly, the Seed Law makes it unlawful "[t]o transport, to offer for transportation, to sell, distribute, offer for sale or expose for sale within this State agricultural or vegetable seeds for seeding purposes" if those seeds, *inter alia*, are "[n]ot labeled in accordance with the provisions of this Article," present a "false or misleading labeling or claim," or have "affixed names or terms that create a misleading impression as to the kind, kind and variety, history, productivity, quality or origin of the seeds." *Id.* § 106-277.9(1).

In 1971 we first were confronted with determining whether and how the Seed Law affects private, civil litigation premised on allegations of mislabeled seed. *See generally Gore*, 279 N.C. 192, 182 S.E.2d 389. In *Gore* the plaintiff ordered a particular type of tomato seed from the defendant. *Id.* at 195, 182 S.E.2d at 390. The seed was delivered to the plaintiff in several packets that each bore the following limitation of remedies clause:

> LIMITATION OF WARRANTY: Geo. J. Ball, Inc. warrants, to the extent of the purchase price, that seeds, plants, bulbs, growers supplies and other materials sold are as described on the container, within recognized tolerances. We give no other or further warranty, express or implied.

*Id.* at 195, 182 S.E.2d at 390. The plaintiff planted the seed and the seed produced tomato plants. *Id.* at 195, 182 S.E.2d at 390. It was not until the young tomatoes first appeared, however, that the plaintiff realized that they were not of the type that he had ordered. *See id.* at 195, 182 S.E.2d at 390. Instead of producing tomatoes that were "slightly flattened, uniform and free of cracks" and of "excellent size," the plants produced tomatoes of an "unusual shape" that "were a variety of tomato wholly unsuited for sale for table use." *Id.* at 194-95, 182 S.E.2d at 390. On the basis of these facts, the plaintiff sued the defendant for negligence in mislabeling the seed and for what this Court construed as "a breach of [ ] contract by failure to deliver the seed ordered, a breach of warranty of fitness of the seed for the purpose for which the plaintiff intended to use them and a failure of consideration." *Id.* at 198-99, 182 S.E.2d at 392. The plaintiff sought consequential damages totaling $9966.00, although he had paid only $5.00 for the seed. *Id.* at 195, 199, 182 S.E.2d at 390, 392. The trial court granted the defendant's motion for a directed verdict and dismissed the action. *Id.* at 197, 182 S.E.2d at 391.

On appeal from the trial court, the Court of Appeals held the trial court had erred in part in granting a directed verdict for the defendant and remanded the case to the trial court on the breach of contract claim on the grounds that a jury could award nominal damages on the plaintiff's contract claim. *Id.* at 197, 182 S.E.2d at 391-92. On appeal to this Court, we held the judgment of the Court of Appeals to be correct except as to its statement concerning the damages recoverable by the plaintiff.

*Id.* at 211, 182 S.E.2d at 400. We began our analysis of recoverable damages by observing:

> Even though the jury should find that the provision entitled 'Limitation of Warranty' was so located and printed in the catalogue and other documents relied upon by the defendant as to bring it to the plaintiff's attention and so make it a part of the contract, it will not avail the defendant if it is contrary to the public policy of this State. A provision in a contract which is against public policy will not be enforced.

*Id.* at 203, 182 S.E.2d at 395 (citing *In re Receivership of Port Publ'g Co.*, 231 N.C. 395, 397, 57 S.E.2d 366, 367 (1950); *Glover v. Rowan Mut. Fire Ins. Co.*, 228 N.C. 195, 198, 45 S.E.2d 45, 47 (1947); *Cauble v. Trexler*, 227 N.C. 307, 311, 42 S.E.2d 77, 80 (1947); *Seminole Phosphate Co. v. Johnson*, 188 N.C. 419, 428, 124 S.E. 859, 862 (1924); *Miller v. Howell*, 184 N.C. 119, 122, 113 S.E. 621, 622-23 (1922); and *Standard Fashion Co. v. Grant*, 165 N.C. 453, 456, 81 S.E. 606, 607-08 (1914)). Given the underlying facts of *Gore*, this Court looked to the Seed Law for guidance. After considering the stated purpose of the Seed Law and the provisions regulating labeling of seed, we concluded:

> [T]he statute has declared the policy of North Carolina to be one of protecting the farmer from the disastrous consequences of planting seed of one kind, believing he is planting another. To permit the supplier of seed to escape all real responsibility for its breach of contract by inserting therein a skeleton warranty, such as was here used, would be to leave the farmer without any substantial recourse for his loss.

*Id.* at 208, 182 S.E.2d at 398. According to this Court, such a result is necessary because "the breach of the contract of sale of seed . . . . *always* causes disaster. Loss of the intended crop is inevitable. The extent of the disaster is measured only by the size of the farmer's planting." *Id.* at 208, 182 S.E.2d at 398. Accordingly, the Court concluded that "the phrase, 'to the extent of the purchase price,' as used in the 'Limitation of Warranty' relied upon by the defendant, is contrary to the public policy of this State as declared in the North Carolina Seed Law . . . and is invalid." *Id.* at 208, 182 S.E.2d at 398 (citation omitted).

In the present case we consider facts that are nearly identical to those in *Gore*: plaintiffs purchased particular types of seed, received packages of the wrong seed mislabeled as the type or types ordered, and only discovered the mistake after the planted seeds yielded crops different from those anticipated. Furthermore, both cases involve contract clauses that purport to limit recoverable damages to the purchase price of the seed in any action potentially arising from the seed purchase transaction. Despite these nearly identical facts, defendant contends that our reasoning in *Gore* should not be applied in the present case because the transaction at issue in *Gore* predated the effective date of the UCC in North Carolina. Defendant contends that although the Court in *Gore* may have accurately described and applied the law in seed mislabeling cases in a pre-UCC world, the reasoning in *Gore* no longer remains correct in view of current North Carolina law on the subject. We do not agree with this argument.

Article 2 of the UCC, which was enacted in North Carolina in 1965, states that a seller's warranty "may limit or alter the measure of damages recoverable under this article, as by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of nonconforming goods or parts." N.C.G.S. § 25-2-719(1)(a). If a limited remedy "is expressly agreed to be exclusive," then "it is the sole remedy," *id.* § 25-2-719(1)(b), and "[c]onsequential damages may be limited or excluded unless the limitation or exclusion is unconscionable," *id.* § 25-2-719(3); however, Article 2 also provides for exceptions to these general rules. Critical to this case, Article 2 does not "impair or repeal any statute regulating sales to consumers, farmers or other specified classes of buyers." *Id.* § 25-2-102 (2015). The Seed Law expressly regulates sale of seed to farmers and therefore, falls squarely within the section 25-2-102 exception. As such, the labeling provisions of the Seed Law considered by this Court in *Gore* were not "impair[ed] or repeal[ed]" by enactment of the UCC. *Id.* Consequently, we conclude that this Court's reasoning in *Gore* regarding the public policy underlying the mislabeling provisions was not limited solely to the facts of that case, and the analysis employed in *Gore* remains intact.

In addition, since our decision in *Gore* the General Assembly has taken no steps to repudiate our construction and application of the Seed Law. "[T]he legislature is always presumed to act with full knowledge of prior and existing law and [ ] where it chooses not to amend a statutory provision that has been interpreted in a specific way, we may assume that it is satisfied with that interpretation." *Polaroid Corp. v.*

*Offerman*, 349 N.C. 290, 303, 507 S.E.2d 284, 294 (1998) (citation omitted), *cert. denied*, 526 U.S. 1098 (1999), *abrogated on other grounds by Lenox, Inc. v. Tolson*, 353 N.C. 659, 663, 548 S.E.2d 513, 517 (2001); *see also Hewett v. Garrett*, 274 N.C. 356, 361, 163 S.E.2d 372, 375 (1968) (determining that when the General Assembly had convened in seventeen regular sessions and several special sessions without changing a particular statute, this Court could "assume [that] the law-making body [was] satisfied with the interpretation this Court has placed upon [it]"). We also have found the law on a particular point settled when the General Assembly chose not to change a statute following a decision rendered by this Court only a year before. *City of Raleigh v. Mechs. & Farmers Bank*, 223 N.C. 286, 292, 26 S.E.2d 573, 576 (1943). Relevant to this case, since their enactment in 1965, the General Assembly has not altered section 25-2-102 or section 25-2-719 to provide expressly for enforcement of limitation of remedies clauses in mislabeled seed cases. *See* N.C.G.S. §§ 25-2-102, -719. Neither has the General Assembly made any change to the Seed Law that repudiates our understanding in *Gore* of the Seed Law's underlying policy and purpose. Such "[l]ong acquiescence in the practical interpretation of a statute is entitled to great weight in arriving at its meaning." *Polaroid Corp.*, 349 N.C. at 303, 507 S.E.2d at 294 (quoting *State v. Emery*, 224 N.C. 581, 587, 31 S.E.2d 858, 862 (1944)).

Defendant next argues that, in accord with the opinion of the Court of Appeals in *Billings v. Joseph Harris Co.*, which was affirmed by this Court, limitation of

remedies clauses such as the one at issue here are enforceable pursuant to Article 2 of the UCC. The plaintiff in *Billings* purchased cabbage seed that was infected with a seed borne disease that caused the plants to rot in the field. In *Billings* the plaintiff argued before the Court of Appeals that its case was not governed by Article 2 of the UCC but by the Seed Law and this Court's decision in *Gore*. *Billings*, 27 N.C. App. 689, 696, 220 S.E.2d 361, 367 (1975), *aff'd*, 290 N.C. 502, 226 S.E.2d 321 (1976). As defendant notes in support of its position here, the Court of Appeals rejected the plaintiff's argument in *Billings* and held that the disclaimers of warranties used by the defendant were "beyond the parameters of the Seed Law." *Id.* at 696, 220 S.E.2d at 367. The Court of Appeals distinguished *Gore* on several grounds, including that the defendant in *Billings* "shipped the precise seed ordered by [the] plaintiff." *Id.* at 697, 220 S.E.2d at 367.

We do not agree that the decision of the Court of Appeals in *Billings* is determinative in the present case. When this Court considered *Billings* on appeal, we distinguished it from our preceding decision in *Gore*. *Billings*, 290 N.C. at 507, 226 S.E.2d at 324. We noted that in *Gore* "the defendant delivered the wrong kind of seed, whereas, in [*Billings*], the plaintiff admit[ted] that he received the exact kind of seed he ordered." *Id.* at 507, 226 S.E.2d at 324. Therefore, we concluded that in *Billings* "there was no violation of the North Carolina Seed Law through false labeling" or mislabeling of seed. *Id.* at 507, 226 S.E.2d at 324. Because the present case clearly involves mislabeled seed, it is clear that the reasoning of this Court in

*Gore*, not *Billings*, is controlling. Since there was no mislabeling issue in *Billings*, the Court expressed "no opinion as to whether, where there has been such a breach, a limitation of the buyer to the recovery of the purchase price is 'reasonable in the light of the anticipated or actual harm caused by the breach.' " *Id.* at 510, 226 S.E.2d at 325 (quoting N.C.G.S. § 25-2-718). In contrast to the actual question in *Billings*, the hypothetical issue referenced by the Court is the one we address in this case.

Defendant also argues that the legislature "did not intend for the Seed Law to prevent a seller from enforcing its limitation of remedies in private litigation." In support of this position, defendant contends that the Seed Law is a regulatory statute that does not create a private right of action by which an injured party may seek damages for a violation. Defendant further contends that the Seed Law explicitly affects private, civil litigation in only two ways: first, factual evidence and scientific opinions contained in a report of the Seed Board may be introduced in court proceedings pursuant to subsection 106-277.34(a), and second, subsection 106-277.34(b) limits damages in private actions in which the buyer did not make a sworn complaint against the dealer pursuant to the Seed Law to the "expenses incurred in connection with the cultivation of the seed alleged to be defective." N.C.G.S. § 106-277.34. Applying the doctrine of *expressio unius est exclusio alterius*—"[w]here a statute . . . sets forth the instances of its application or coverage, other methods or coverage are necessarily excluded," *State ex rel. Hunt v. N.C. Reinsurance Facil.*, 302 N.C. 274, 290, 275 S.E.2d 399, 407 (1981) (quoting 12 Strong's North Carolina Index

3d: *Statutes* § 5.10 (1978))—to these provisions, defendant argues that the Seed Law cannot be construed to otherwise affect private, civil actions. Specifically, defendant maintains that the underlying policy of the Seed Law as expressed in *Gore* cannot be applied to prevent enforcement of a limitation of remedies clause in a private, civil action.

Although the Seed Law is regulatory in nature, it does not bar aggrieved parties from pursuing private, civil litigation for damages resulting from mislabeled seed. In fact, certain provisions of the Seed Law clearly demonstrate that the General Assembly contemplated such recourse. As defendant observes, the 1998 amendments to the Seed Law provide for certain evidentiary constraints in "any court action involving a complaint that has been the subject of an investigation under G.S. 106-277.32," quoting N.C.G.S. § 106-277.34(a), and outline recovery limitations in "any court action where a buyer alleges that he or she suffered damages due to the failure of agricultural or vegetable seed to produce or perform as labeled . . . and the buyer failed to make a sworn complaint against the dealer as set forth in G.S. 106-277.30," quoting *id.* § 106-277.34(b). At the same time, although these two provisions do explicitly regulate private actions involving mislabeled seeds, their existence does not abrogate our reasoning in *Gore*. Again, because "the legislature is always presumed to act with full knowledge of prior and existing law" and it has taken no action over the last forty years to invalidate our interpretation in *Gore* of the policy of the Seed Law regarding limitation of remedies, "we may assume that [the General Assembly]

is satisfied with that interpretation." *Polaroid Corp.*, 349 N.C. at 303, 507 S.E.2d at 294. Defendant's reliance on the doctrine of *expressio unius est exclusio alterius* is inapposite.

In *Gore* we interpreted the Seed Law to invalidate enforcement of limitation of remedies clauses in private, civil actions based on mislabeled seed. 279 N.C. at 208, 182 S.E.2d at 398. For the reasons stated above, we apply our decision in *Gore* to the present case and reaffirm our previous conclusion that it is the public policy of North Carolina, as expressed by the General Assembly in the Seed Law, to protect farmers from "the disastrous consequences of planting seed of one kind, believing [they are] planting another." *Id.* at 208, 182 S.E.2d at 398. For the purpose of resolving the issue before us, we accept plaintiffs' contentions that they were sold mislabeled tobacco seed and could only recognize the mistake after planting the seeds and witnessing yields of "off-type" plants that were "defective, disease prone, inferior, and unmarketable." In light of these facts, plaintiffs here fall squarely within the protection afforded by the policy we recognized in *Gore*. Enforcing defendant's limitation of remedies clauses pursuant to Article 2 of the UCC in this case would foreclose the possibility of plaintiffs' recovering consequential damages for the mislabeled seed and would, therefore, violate that policy. Accordingly, we hold that defendant's limitation of remedies clauses are unenforceable against plaintiffs, and we affirm the opinion and order of the North Carolina Business Court denying defendant's motions for partial summary judgment against all plaintiffs.

AFFIRMED.