NARLEY CASHWELL v. DEPARTMENT OF STATE TREASURER, RETIREMENT SYSTEMS DIVISION, AND MICHAEL WILLIAMSON, DIRECTOR, RETIREMENT SYSTEMS DIVISION

No. COA08-432

(Filed 7 April 2009)

**Pensions and Retirement— Consolidated Judicial Retirement System—Teachers' and State Employees Retirement System—entitlement to tax free pension**

The trial court did not err by denying petitioner a state tax free pension under the Consolidated Judicial Retirement System and the Teachers' and State Employees Retirement System because: (1) N.C.G.S. §§ 135-5 and 135-4 read in conjunction provide that a member of a state retirement system who leaves state service and withdraws contributions in the retirement system has no rights to any benefits within the retirement system except for the right to repay previously withdrawn contributions as provided in N.C.G.S. § 135-4; (2) petitioner acquired the right to repay his previously withdrawn contributions since he vested in the retirement system in 1995, and it would be a strained statutory interpretation to allow his vesting date to shift depending on the amount of previously withdrawn contributions the employee

chooses to repay; and (3) petitioner's repayment of contributions withdrawn prior to 12 August 1989 does not entitle petitioner to a tax-free pension, and the repayment of previously withdrawn contributions serves only to increase the years of service creditable to an employee.

Appeal by petitioner from order entered 18 February 2008 by Judge R. Allen Baddour, Jr. in Wake County Superior Court. Heard in the Court of Appeals 9 October 2008.

*Poyner & Spruill, LLP, by Edwin M. Speas, Jr., for petitioner-appellant.*

*Attorney General Roy Cooper, by Assistant Attorney General Robert M. Curran, for respondent-appellee.*

CALABRIA, Judge.

Narley Cashwell ("petitioner") appeals an order denying petitioner a tax free pension[1] under the Consolidated Judicial Retirement System ("CJRS") and the Teachers' and State Employees Retirement System ("TSERS"). We find no error.

### I. TSERS and CJRS

The TSERS and CJRS are retirement systems created by the General Assembly for North Carolina state employees. Both systems are similarly structured, administered by the Retirement Systems Division of the Department of the State Treasurer ("respondent"), and funded by contributions from eligible employees ("members"). Each month a portion of each member's salary is deducted through payroll deductions and transferred to the Retirement Systems Division. If a member leaves eligible employment, the member has discretion to withdraw contributions from the retirement system. This action effectively terminates a member's rights in the plan. If a former member later returns to eligible employment, after five years of membership service, previously withdrawn contributions can be repaid to the retirement system.

### II. Tax Exemptions

Prior to 1989, retirement benefits ("pensions") paid by state-administered retirement plans were exempt from state income tax.

---

1. The legislation, and therefore this decision, only addresses petitioner's right to a pension free from state income tax. Petitioner's federal income tax obligations are not implicated.

N.C. Gen. Stat. § 135-9 (1988) (TSERS); N.C. Gen. Stat. § 135-52(a) (1988) (CJRS). Effective 12 August 1989, the legislature repealed the complete tax exemption on state pensions and replaced them with an exemption on only the first $4,000 of state pensions paid to a retiree each year. N.C. Gen. Stat. § 105-134.6 (1989). This statute was challenged. The North Carolina Supreme Court held in *Bailey v. State*, 348 N.C. 130, 167, 500 S.E.2d 54, 76 (1998), that the legislature's repeal of the tax exemption was an unconstitutional impairment of the contractual rights for members of state-administered retirement systems who had previously vested by completing five continuous years of service on or before 12 August 1989. Therefore, after *Bailey*, any member who was vested in a state retirement plan prior to 12 August 1989 must receive a pension wholly exempt from state income tax, while only the first $4,000 of annual payments is exempt from state income taxation for those members who vested after 12 August 1989.

## III. Background

Petitioner was employed as an assistant district attorney, and was enrolled as a member of TSERS from March 1976 through February 1982. During that time, he accrued approximately five years, eleven months of service. When petitioner resigned from his employment in 1982, he requested and received all his TSERS contributions pursuant to N.C. Gen. Stat. § 135-5(f). Upon withdrawing his TSERS contributions, petitioner's membership in the system ceased. Specifically, he no longer was entitled to rights or benefits under TSERS, except for the right to repay his withdrawn contributions as provided by N.C. Gen. Stat. § 135-4(k).

Between February 1982 and August 1986, petitioner served as a district court judge. As a judge, petitioner was enrolled as a member of CJRS. At the end of his service he requested and received a return of his accumulated CJRS contributions. When petitioner's membership in CJRS ended, he was not entitled to any future benefits from CJRS, aside from his right to repay his withdrawn contributions as provided by N.C. Gen. Stat. § 135-4(k).

After engaging in the private practice of law from September 1986 through December 1990, petitioner returned to the judiciary as a superior court judge in January 1991. Petitioner again became a member of CJRS and continued as a member for a sixteen year period.

Petitioner became vested in CJRS after five years of service in 1996. As a vested member of the CJRS, petitioner was eligible to purchase credit in CJRS for his previously withdrawn CJRS con-

tributions from his service as district court judge. In addition, he was also eligible to purchase credit in TSERS for his previously withdrawn TSERS contributions from his service as an assistant district attorney.

In March 1996, pursuant to N.C. Gen. Stat. § 135-4(k), petitioner repaid all contributions he had previously withdrawn from CJRS when his term ended as a district court judge in 1986. In August 1999 and August 2001, petitioner repaid all the contributions he had withdrawn from TSERS when he resigned his employment as an assistant district attorney in 1982. Petitioner's repaid TSERS contributions were transferred to his CJRS account.

In August 2006, petitioner sent a letter to respondent asking about a specific section regarding an income tax withholding election. Petitioner quoted from Section E, page 2 on form 290. "Retirement benefits are exempt from North Carolina income tax provided you had five (5) or more years of maintained creditable service in the Retirement System as of August 12, 1989." Petitioner asked if this language applied to his retirement benefits since he accumulated 9.5833 years of creditable service prior to 12 August 1989.

The respondent informed petitioner that he would not be entitled to a tax-free pension because he had not vested in the retirement system prior to 12 August 1989. Therefore, only the first $4000 annually would not be subject to state income tax.

Petitioner's retirement was effective 1 January 2007 and he began to receive his pension without a complete tax exemption. Respondent counted petitioner's repurchased service in computing and paying his retirement benefits but refused to consider the corresponding dates of petitioner's repurchased service for purposes of his eligibility for a tax-free pension.

On 9 April 2007, petitioner requested, and received, a declaratory ruling from respondent. Petitioner believed the declaratory ruling was incorrect as a matter of law and filed a petition for judicial review in Wake County Superior Court on 19 June 2007. The Honorable R. Allen Baddour, Jr. issued a memorandum and order on 18 February 2008 affirming respondent's declaratory ruling. Petitioner appealed.

### IV. Standard of Review

The issue presented on appeal is a question of statutory construction.

The primary goal of statutory construction is to effectuate the purpose of the legislature in enacting the statute. The first step in determining a statute's purpose is to examine the statute's plain language. Where the language of a statute is clear and unambiguous, there is no room for judicial construction and the courts must construe the statute using its plain meaning.

*State v. Hooper*, 358 N.C. 122, 125, 591 S.E.2d 514, 516 (2004) (internal citations and quotations omitted). "In determining whether an agency erred in interpreting a statutory term, an appellate court employs a *de novo* review." *County of Durham v. N.C. Dep't of Env't & Natural Resources*, 131 N.C. App. 395, 396, 507 S.E.2d 310, 311 (1998).

## V. Arguments

Petitioner contends that "credit for the service forfeited at the time of withdrawal" as used in N.C. Gen. Stat. § 135-4 serves not only to increase his years of service for retirement purposes but also requires the respondent to treat the petitioner as if he had never withdrawn the corresponding contributions at all. Petitioner contends the legislature intended that employees who repay previously withdrawn credit should be treated as if they never withdrew the credit. Therefore, he is entitled to the benefits he would have been entitled to as if he had never withdrawn his contributions.

Respondent argues that the repayment of the withdrawn funds serves only to increase the creditable years of service, and does not entitle petitioner to any benefits that would have been available to petitioner at the time of withdrawal, or revive the prior years of service for benefits purposes. Pursuant to N.C. Gen. Stat. § 135-5(f), when an employee leaves state service and withdraws previous contributions in the retirement system not only does membership in the retirement system cease but rights to any benefits within the retirement system also cease, except for the right to repay previously withdrawn contributions as provided in N.C. Gen. Stat. § 135-4(k).

Respondent further argues that petitioner's interpretation of the statutes fails to deal with the underlying premise of *Bailey*, since petitioner vested after 12 August 1989. According to respondent, up until the moment petitioner vested in the CJRS in 1995, he had no rights of any kind in the retirement system arising from his prior service. Upon vesting in 1995, the only right petitioner had regarding his prior service was the right to repay his previously withdrawn contributions.

Petitioner does not rely on vested rights or vesting to establish his eligibility to obtain the benefits provided by the legislature; rather he relies on the relevant statutes, N.C. Gen. Stat. §§ 135-5(f) and 135-4(k). When an employee leaves state employment and seeks to recover contributions:

> Should a member cease to be a teacher or State employee except by death or retirement under the provisions of this Chapter, he shall upon submission of an application be paid . . . his contributions. . . . Upon payment of such sum his membership in the System shall cease and, if he thereafter again becomes a member, no credit shall be allowed for any service previously rendered except as provided in G.S. 135-4, and such payment shall be in full and complete discharge of any rights in or to any benefits otherwise payable hereunder.

N.C. Gen. Stat. § 135-5(f) (2008).

When an employee returns to service and completes five years of service, the employee can repay an amount that corresponds with the contributions that were previously withdrawn.

> Notwithstanding any other provision of this Chapter, any person who withdrew his contributions in accordance with the provisions of G.S. 128-27(f) or G.S. 135-5 . . . and who subsequently returns to service may, upon completion of five years of membership service, repay . . . any and all of the accumulated contributions previously withdrawn . . . and receive credit for the service forfeited at the time of withdrawal. . . .

N.C. Gen. Stat. § 135-4(k) (2008).

Petitioner argues that by using the language "[n]otwithstanding any other provision of this Chapter" the legislature intended to prohibit the application of, not just provisions that might contradict N.C. Gen. Stat. § 135-4, but also any provisions that could be read in conjunction with N.C. Gen. Stat. § 135-4. Petitioner contends the language of N.C. Gen. Stat. § 135-5(f) should be disregarded when determining the meaning of N.C. Gen. Stat. § 135-4.

In the alternative, petitioner argues, even if the "notwithstanding" language requires both statutes should be given effect, the language "[e]xcept as provided in N.C. Gen. Stat. § 135-4" indicates that the legislature intended N.C. Gen. Stat. § 135-5(f) has no effect on a claim for benefits under N.C. Gen. Stat. § 135-4. We disagree.

Our Supreme Court specifically addressed the meaning of "notwithstanding any other provision of this Chapter" as used throughout N.C. Gen. Stat. § 135-4. *Osborne v. Consolidated Judicial Retirement System*, 333 N.C. 246, 424 S.E.2d 115 (1993). In *Osborne*, a judge who was a member of the CJRS challenged respondent's method of calculating his cost to purchase retirement credits based upon his prior military service. *Id.* at 246, 424 S.E.2d at 116. The resolution depended upon the interpretation of a section of N.C. Gen. Stat. § 135-4 that was in effect on 7 December 1980 when the judge became eligible to purchase retirement credits based on his military service. The section began "[n]otwithstanding any other provision of this Chapter" and set out a formula to calculate his costs. *Id.* at 247, 424 S.E.2d at 116. The second section of 135-4 stated the purchase had to be made within three years. *Id.* at 248, 424 S.E.2d at 117. The judge argued the "notwithstanding" language precluded the application of the statute which imposed a three year limitation. The judge also argued that the plain meaning of these words is that no other provision of Section 135 could be read to limit the section in which this language is found. *Id.* at 248, 424 S.E.2d at 117. The Supreme Court disagreed.

Although the section beginning "notwithstanding" gave the judge the right to purchase retirement credits, there was nothing in the statute that said how long his rights remained open. The three year limitation in the second section did not make the two subsections inconsistent. *Id.* at 248, 424 S.E.2d at ——. The Court read both subsections together to "give effect to both subsections." *Id.*

Just as the Supreme Court in *Osborne* gave effect to both relevant subsections of N.C. Gen. Stat. § 135, we too must read N.C. Gen. Stat. § 135-5 in conjunction with N.C. Gen. Stat. § 135-4. Read together, the statutes make clear that a member of a state retirement system who leaves state service and withdraws contributions in the retirement system has no rights to any benefits within the retirement system except for the right to repay previously withdrawn contributions as provided in N.C. Gen. Stat. § 135-4.

The legislature made a special provision for employees who return to state employment. Specifically, if an employee returns to service and completes five years of service, the employee has the right to repay "any and all of the accumulated contributions previously withdrawn." N.C. Gen. Stat. § 135-4(k). This provision gives the employee the option to either repay all previously withdrawn contributions, or a portion of any previously withdrawn contributions. If we accepted

petitioner's interpretation requiring the respondent to treat an employee who repays previously withdrawn contributions as if he had not withdrawn his original contributions, we would be giving employees the opportunity to create their own vesting date. While petitioner contends that his argument is not based on vested rights, the practical effect of treating an employee who purchases previously withdrawn credit as if the contributions had never been withdrawn is to change the employee's vesting date.

Petitioner acquired the right to repay his previously withdrawn contributions because he vested in the retirement system in 1995. It would be a strained statutory interpretation to allow his vesting date to shift depending on the amount of previously withdrawn contributions the employee chooses to repay.

Petitioner's argument is weakened further upon a close examination of the definitions sections of both TSERS, and CJRS. "Creditable Service" is defined in the definition section of the TSERS chapter as "the total of 'prior service' plus 'membership service' plus service, both noncontributory and purchased, for which credit is allowable as provided in G.S. 135-4. In no event, however, shall 'creditable service' be deemed 'membership service' for the purposes of determining eligibility for benefits accruing under this Chapter." N.C. Gen. Stat. § 135-1(8) (2007). The CJRS provides a similar, albeit more concise definition of "Creditable Service:" "the total of his prior service plus his membership service." N.C. Gen. Stat. § 135-53(6) (2007). The statute makes clear that the character of the service changes. Specifically, service purchased as allowed by N.C. Gen. Stat. § 135-4 does not retain the same character as it had as membership service.

While not addressing the exact statute before this Court, on 2 October 2000 the North Carolina Office of the Attorney General provided its interpretation of a similar provision related to the repayment of credit in the Local Government Employees' Retirement System. *Opinion of Attorney General to Mr. Ralph D. Karpinos, Town Attorney, Town of Chapel Hill*, 2000 N.C. AG LEXIS 12 (10/2/2000). In applying *Bailey*, the Attorney General's Office determined that a purchase of credit would provide employees credit at the present for service rendered in the past. It could not change the fact that, as of 12 August 1989, the employees were not vested in the retirement system. "Purchasing the service credit in 2000 does not retroactively vest them as of 1989, but instead gives them current credit for the purchased time." *Id.* at 2.

CASHWELL v. DEPARTMENT OF STATE TREASURER

[196 N.C. App. 81 (2009)]

"In determining whether an agency erred in interpreting a statu-, tory term, an appellate court employs a *de novo* review. However, even when reviewing a case *de novo*, courts recognize the long-standing tradition of according deference to the agency's interpretation." *County of Durham*, 131 N.C. App. at 397, 507 S.E.2d at 311. "It is well settled that when a court reviews an agency's interpretation of a statute it administers, the court should defer to the agency's interpretation . . . [as] long as the agency's interpretation is reasonable and based on a permissible construction of the statute." *Carpenter v. N.C. Dept. of Human Resources*, 107 N.C. App. 278, 279, 419 S.E.2d 582, 584 (1992). However, when "the only authority for the agency's interpretation of the law is the decision in that case, that interpretation may be viewed skeptically on judicial review. . . . [I]f the agency's interpretation of the law is not simply a 'because I said so' response to the contested case, then the agency's interpretation should be accorded . . . deference. . . ." *Rainey v. N.C. Dep't of Pub. Instruction*, 361 N.C. 679, 681, 652 S.E.2d 251, 252-3 (2007).

The Department of the State Treasurer had not, prior to this case, provided an interpretation of N.C. Gen. Stat. §§ 135-5(f) and 135-4, so its present argument does not enjoy the deference to which it might otherwise be entitled. However, upon the request by petitioner for a declaratory ruling, the agency provided a ruling with a thorough analysis of the issue and case law. Respondent's interpretation is not a "because I said so" response. Moreover, it is reasonable and based on a permissible construction of the statutes.

VI. Conclusion

After contributing to either TSERS or CJRS continuously for five years, members become vested in the retirement system. Petitioner was vested in the TSERS in 1981 and at that time would have been entitled to a tax-free pension under *Bailey*. Petitioner withdrew his contributions in the TSERS in 1982. By withdrawing his contributions from the TSERS in 1982, petitioner had no rights within the system. Petitioner, upon completing five years of service in CJRS in 1995, again became vested within the system. It is only due to his vesting in 1995 that petitioner gained the right to purchase all previously withdrawn contributions.

Petitioner had "a contractual right to rely on the terms of the retirement plan as these terms existed at the moment [his] retirement rights became vested." *Bailey*, at 141, 500 S.E.2d at 60 (citations omitted). Conversely, petitioner may not rely on the terms of the retire-

ment plan as they existed prior to his vesting date. The state may change the terms of state retirement plans and those changes are binding on state employees who have not yet vested in the retirement system. Upon withdrawing his contributions in the TSERS, petitioner divested himself as a member of the retirement systems and gave up any right to the benefits he would have been entitled to had he remained vested in the system.

On the *Bailey* date, 12 August 1989, petitioner was not vested in the retirement system, was not a member of the *Bailey* class, and therefore was not entitled to a tax-free pension. Petitioner's repayment of contributions withdrawn prior to 12 August 1989 does not entitle petitioner to a tax-free pension. The repayment of previously withdrawn contributions serves only to increase the years of service creditable to an employee. The trial court's decision is affirmed.

Affirmed.

Judges STEELMAN and STROUD concur.