IN THE SUPREME COURT OF NORTH CAROLINA

No. 153A19

Filed 28 February 2020

NORTH CAROLINA DEPARTMENT OF REVENUE

v.

GRAYBAR ELECTRIC COMPANY, INC.

Appeal pursuant to N.C.G.S. § 7A-27(a)(2) from an order and opinion on petitioner's petition for judicial review entered on 9 January 2019 by Judge Louis A. Bledsoe III, Chief Special Superior Court Judge for Complex Business Cases, in Superior Court, Wake County, after the case was designated a mandatory complex business case by the Chief Justice under N.C.G.S. § 7A-45.4(a). Heard in the Supreme Court on 6 January 2020.

*Parker Poe Adams & Bernstein LLP, by Kay Miller Hobart, for respondent-appellant.*

*Joshua H. Stein, Attorney General, Matthew W. Sawchak, Solicitor General, Ronald D. Williams II, Assistant Attorney General, James W. Doggett, Deputy Solicitor General, and Caryn Devins Strickland, Solicitor General Fellow, for petitioner-appellee.*

PER CURIAM.

AFFIRMED.

STATE OF NORTH CAROLINA

WAKE COUNTY

N.C. DEPARTMENT OF REVENUE,

Petitioner,

v.

GRAYBAR ELECTRIC COMPANY,
INC.,

Respondent.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
17 CVS 13902

**ORDER AND OPINION ON PETITION
FOR JUDICIAL REVIEW**

1.     **THIS MATTER** presents for decision whether dividends deducted on a corporation's federal corporate income tax return under the dividends-received deduction ("DRD") of section 243 of the Internal Revenue Code (the "Code") constitute "income not taxable" for purposes of calculating the corporation's net economic loss ("NEL") deduction under N.C. Gen. Stat. § 105-130.8(a) (repealed 2014)[1] for North Carolina corporate income tax purposes.  Secondary to this issue is whether reducing NEL deductions by subtracting deducted dividends violates either the United States or North Carolina Constitution.

2.     Petitioner North Carolina Department of Revenue (the "Department") filed its Petition for Judicial Review (the "Petition") on November 17, 2017 seeking reversal of the Office of Administrative Hearings' ("OAH") Final Decision (the "Final Decision") entering summary judgment in favor of Respondent Graybar Electric Company, Inc. ("Graybar").

---

[1] The provisions of this statute were in effect during the years at issue here.  The General Assembly has since modified the statute, effective for the tax years beginning on and after January 1, 2015.

3. The Court held a hearing on the Petition on April 19, 2018, at which both parties were represented by counsel. After considering the Petition, the parties' briefs in support of and in opposition to the Petition, the relevant evidence of record, and the arguments of counsel made at the April 19, 2018 hearing, the Court, for the reasons set forth below, hereby **REVERSES** the Final Decision and **REMANDS** to the OAH with instructions to enter summary judgment in favor of the Department.

> *North Carolina Attorney General, by Special Deputy Attorney General Tenisha S. Jacobs, for Petitioner N.C. Department of Revenue.*

> *Parker Poe Adams & Bernstein LLP, by James Greene, Kay Miller Hobart, and Ray Stevens, for Respondent Graybar Electric Company, Inc.*

Bledsoe, Chief Judge.

I.

FACTUAL AND PROCEDURAL BACKGROUND

4. The material facts of this matter are not in dispute.

5. Graybar is a New York corporation headquartered in St. Louis, Missouri. (R. at 8, ECF No. 20.) The company distributes electrical, communications, and data networking products throughout the United States and is authorized to do business in North Carolina. (R. at 8; *see* R. at 218–19, ECF No. 22.) Graybar files as a "C" corporation for both federal and North Carolina state income tax purposes. (R. at 8.)

6. Graybar is the parent corporation of several wholly owned subsidiaries, including Graybar Services, Inc. ("Graybar Services"), an Illinois corporation, and Commonwealth Controls Corporation ("Commonwealth"), a Missouri corporation. (R. at 8.) Both Graybar Services and Commonwealth are taxed as "C" corporations for

federal income tax purposes. (R. at 8.) Graybar Services has filed North Carolina corporate income tax returns since 1998. (R. at 329, ECF No. 25.)

7. In 2007, Graybar Services paid Graybar a dividend of $400,000,000. (*See* R. at 172.) In 2008, Commonwealth paid Graybar a dividend of $1,000,000. (*See* R. at 173.) Both of these dividends (each a "Dividend," and collectively, the "Dividends") were paid from the respective subsidiary's earnings and profits. (R. at 8.)

8. In 2007 and 2008, the years it received the Dividends, Graybar filed for federal corporate income tax purposes as a consolidated group that included Graybar Services and Commonwealth. (*See* R. at 782.) North Carolina generally does not allow consolidated tax returns but instead requires a corporation to determine its State net income as if it filed a federal return as a separate entity. (R. at 782.) These "as if" federal returns are commonly referred to as pro forma federal corporate income tax returns. (R. at 782.)

9. Graybar included the Dividends on its 2007 and 2008 pro forma federal corporate income tax returns and deducted the Dividends from the amounts it reported as federal taxable income. (*See* R. at 188, 192, 203, 209.) Specifically, Graybar claimed a DRD under section 243 of the Code for the Dividends it had received from its subsidiaries and deducted 100 percent of the Dividends on Line 29(b), "Special Deductions," in its federal corporate income tax returns. (*See* R. at 182, 192, 203, 209.)

10. Because Graybar was doing business in North Carolina in the tax years 2007 and 2008, it filed a series of North Carolina "C" corporation tax returns

reporting its liability for State corporate income and franchise taxes. (R. at 603–04; *see* R. at 648–66.) North Carolina levies a corporate income tax on "State net income," which is based on a corporation's federal taxable income. (R. at 36, ECF No. 21.) Graybar's calculation of its corporate income tax for each of its North Carolina corporate income tax returns reflected the amount of federal taxable income *after* the Dividends were deducted on Line 29(b) of the federal tax returns. (R. at 603–04; *see* R. at 648–66.) Ultimately, Graybar reported its State net income as zero for 2007 and 2008 because it offset its taxable income with substantial NELs it sustained in prior years dating back to 2001. (R. at 605; *see* R. at 648–66.)

11. The Department audited Graybar in 2015. (R. at 605.) After the audit, the Department determined that Graybar underreported its corporate income tax liability for the tax years 2008, 2012, and 2013 because it improperly calculated its NEL deductions. (R. at 35.) The Department concluded that Graybar had failed to reduce the NEL it carried forward to the tax years 2007 and 2008 by the income attributable to the Dividends received. (R. at 605.) The Department reasoned that "[b]efore a [NEL] brought forward may be deducted, . . . [the NEL] must be reduced by any current-year nontaxable income[.]" (R. at 9.) Because the Dividends were deducted from Graybar's federal gross income to derive its federal taxable income, the Department concluded that the Dividends constituted "current-year nontaxable income." (R. at 9.)

12.     The Department accordingly reduced the NELs that Graybar reported in 2007 and 2008 by the apportioned amount of the Dividends received,[2] and as a result, concluded that Graybar did not have a NEL for those two years.  (R. at 605.)  The elimination of the NEL for tax years 2007 and 2008 increased Graybar's State corporate income tax liability for 2008, 2012, and 2013.  (R. at 605–06.)  Based on the new NEL calculation, the Department proposed assessments against Graybar for the tax years 2008, 2012, and 2013, (R. at 6), in the total amount of $380,835.97, inclusive of additional State taxes, penalties, and interest, (R. at 35).

13.     On September 16, 2015, Graybar timely filed with the Department a request for review concerning the proposed assessment of additional State taxes, penalties, and interest.  (R. at 6.)  In June 2016, the Department issued a Notice of Final Determination upholding the assessment, (R. at 35–39), citing N.C. Gen. Stat. § 105-130.8(a)(3), which provides that a NEL from a prior year can be deducted from income in a succeeding year, "only to the extent that the loss carried forward from the prior year exceeds any income not taxable" received in the succeeding year.  The Department found that the Dividends received constituted "income not taxable," and thus that Graybar was required to reduce its NEL deductions by the amount of the Dividends apportioned to North Carolina.  (R. at 37–38.)

---

[2] It is undisputed that the Dividends constituted North Carolina apportionable income under the then current version of N.C. Gen. Stat. § 105-130.4 during the tax years at issue.  While the Dividends totaled $400,000,000 in 2007 and $1,000,000 in 2008, the amount apportioned to North Carolina for state income tax purposes was $14,194,000 and $34,465, respectively. (R. at 9.)

14.    Following receipt of the Notice of Final Determination, Graybar filed a contested case with the OAH on August 10, 2016, alleging that "the Department improperly reduced [Graybar's] net economic loss carryovers" by the amounts attributable to the Dividends.  (R. at 27–34.)  Graybar argued that its Dividend income was not "income not taxable" and that a reduction of its NELs was unconstitutional under both the North Carolina and United States Constitutions.  (R. at 30–33.)  Both parties moved for summary judgment on June 9, 2017.  (R. at 4.)

15.    By a Final Decision issued on October 16, 2017, the OAH entered summary judgment for Graybar, holding that the Dividends were "taxable as a matter of law" and were "not 'income not taxable.'"  (R. at 4–23, 14.)  The OAH further noted its agreement with Graybar's contention that "the Department's position created a double taxation on the same income" in violation of the North Carolina Constitution.  (R. at 21.)

16.    On November 14, 2017 the Department filed the Petition in Wake County Superior Court, seeking reversal of the OAH's Final Decision and the entry of summary judgment in favor of the Department.  The matter was subsequently designated as a complex business case by the Chief Justice of the Supreme Court of North Carolina and assigned to the undersigned.  The Department and Graybar each submitted briefs in support of and opposition to the Petition, each seeking the entry of summary judgment in its favor.  On April 19, 2018, the Court held a hearing on the Petition, at which both parties were represented by counsel.  The Petition is now ripe for resolution.

## II.

## LEGAL STANDARD

17.     When the trial court "exercises judicial review over an agency's final decision, it acts in the capacity of an appellate court." *Meza v. Div. of Soc. Servs.*, 364 N.C. 61, 75, 692 S.E.2d 96, 105 (2010) (quoting *N.C. Dep't of Env't & Nat. Res. v. Carroll*, 358 N.C. 649, 662, 599 S.E.2d 888, 896 (2004)).

18.     Chapter 150B of the North Carolina General Statutes provides that "[t]he court reviewing a final [agency] decision may affirm the decision or remand the case for further proceedings." N.C. Gen. Stat. § 150B-51(b). "In reviewing a final decision in a contested case, the court shall determine whether the petitioner is entitled to the relief sought in the petition based upon its review of the final decision and the official record." *Id.* § 150B-51(c).

19.     The Department appeals the Final Decision of the OAH granting summary judgment in favor of Graybar. "Appeals arising from summary judgment orders are decided using a *de novo* standard of review." *Midrex Techs. v. N.C. Dep't of Revenue*, 369 N.C. 250, 257, 794 S.E.2d 785, 791 (2016). Under the *de novo* standard of review, the Court will "consider[] the matter anew and freely substitute[] its own judgment" for that of the OAH. *Carroll*, 358 N.C. at 660, 599 S.E.2d at 895 (quoting *Mann Media, Inc. v. Randolph Cnty. Planning Bd.*, 356 N.C. 1, 13, 565 S.E.2d 9, 17 (2002)). "In reviewing a final decision allowing . . . summary judgment, the court may enter any order allowed by . . . Rule 56" of the North Carolina Rules of Civil Procedure. N.C. Gen. Stat. § 150B-51(d).

20.     Under Rule 56, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to . . . judgment as a matter of law." N.C. R. Civ. P. 56(c). A genuine issue is "one that can be maintained by substantial evidence." *Dobson v. Harris*, 352 N.C. 77, 83, 530 S.E.2d 829, 835 (2000). A material fact is one that "would constitute or would irrevocably establish any material element of a claim or defense." *Abner Corp. v. City Roofing & Sheetmetal Co.*, 73 N.C. App. 470, 472, 326 S.E.2d 632, 633 (1985). Summary judgment is appropriate if "the facts are not disputed and only a question of law remains." *Wal-Mart Stores E. v. Hinton*, 197 N.C. App. 30, 37, 676 S.E.2d 634, 638 (2009) (quoting *Carter v. W. Am. Ins. Co.*, 190 N.C. App. 532, 536, 661 S.E.2d 264, 268 (2008)). Thus, where, as here, the material facts are undisputed on appeal, "a summary disposition of the claims is proper and appropriate." *Technocom Bus. Sys. v. N.C. Dep't of Revenue*, 2011 NCBC LEXIS 1, at *12 (N.C. Super. Ct. Jan. 4, 2011).

21.     Graybar, as the "taxpayer claiming a deduction," must bring itself "within the statutory provisions authorizing the deduction." *Wal-Mart Stores E.*, 197 N.C. App. at 54–55, 676 S.E.2d at 651 (quoting *Ward v. Clayton*, 5 N.C. App. 53, 58, 167 S.E.2d 808, 811 (1969)).

III.

ANALYSIS

22. North Carolina imposes a tax on the "State net income of every C Corporation doing business in this State[.]" N.C. Gen. Stat. § 105-130.3. "State net income" is based on a "taxpayer's federal taxable income as determined under the Code, adjusted as provided in G.S. 105-130.5[.]" *Id.* § 105-130.2(15). Under the Code, federal taxable income "means gross income minus the deductions allowed by [the Code]." I.R.C. § 63(a). Although the Code identifies dividends as an item of gross income, *id.* § 61(a)(7), the DRD allowed under section 243 of the Code authorizes a corporation to deduct "100 percent" of the dividends it receives from "a member of the same affiliated group[,]" *id.* § 243(a)(3), (b)(1)(A). Because dividends deducted under the DRD are not included in a corporation's federal taxable income, such dividends are likewise not included in a corporation's State net income.

23. As noted, a corporation's State net income is subject to certain adjustments set forth in section 105-130.5. N.C. Gen. Stat. § 105-130.2(15). One such adjustment authorizes a deduction for "[l]osses in the nature of net economic losses sustained by the corporation in any or all of the 15 preceding years pursuant to the provisions of G.S. 105-130.8." *Id.* § 105-130.5(b)(4). In turn, the now-repealed section 105-130.8 provided that a corporation that sustained a NEL in any or all of the preceding fifteen income years was permitted to apply the NEL as a deduction from income in a succeeding taxable year. *Id.* § 105-130.8(a). Such deductions, however, were limited by section 105-130.8(a)(3), which provided in relevant part as follows:

Any net economic loss of prior years brought forward and claimed as a deduction in any income year may be deducted from net income of the year only to the extent that the loss carried forward from the prior years exceeds any *income not taxable under this Part* received in the same year in which the deduction is claimed[.]

*Id.* § 105-130.8(a)(3) (emphasis added).  The purpose of this NEL provision was to provide "some measure of relief to the corporation that has incurred economic misfortune."  *Id.* § 105-130.8(a)(1).

24.    Here, Graybar deducted from its gross income the Dividends received pursuant to the DRD and claimed those deductions to arrive at the amounts reported on Line 30 of its 2007 and 2008 federal corporate income tax returns as its federal taxable income.  For purposes of its North Carolina corporate income tax returns, Graybar reported the amounts reflected on Line 30 of its federal returns as its "federal taxable income," and this figure became the starting point for the calculation of Graybar's State net income.  As a result, the Dividends, deducted from gross income to determine federal taxable income, were not included in the amounts that comprised Graybar's State net income.  Graybar ultimately reported its State net income as zero for 2007 and 2008 because Graybar's substantial NELs from prior years were greater than Graybar's apportioned federal taxable income as reflected on its North Carolina corporate income tax returns.  In calculating its NELs, Graybar did not reduce its losses by the amount of the Dividends received (i.e., it did not treat the Dividends as "income not taxable" under section 105-130.8(a)(3)).

A.    Income Not Taxable

25.    In the proceeding below, the OAH concluded that the Dividends were not "income not taxable" for purposes of the NEL provision then in effect. The OAH specifically concluded, and Graybar argues here, that the Dividends were not "income not taxable" because they do not fall within either of the two categories of income specifically referenced in N.C. Gen. Stat. § 105-130.8(a)(5):

> For purposes of this section, any income item deductible in determining State net income under the provisions of G.S. 105-130.5 and any nonapportionable income not allocable to this State under the provisions of G.S. 105-130.4 *shall be considered* as income not taxable under this Part. The amount of the income item considered income not taxable under this Part is determined after subtracting related expenses for which a deduction was allowed under this Part.

*Id.* § 105-130.8(a)(5) (emphasis added).

26.    The OAH agreed with Graybar's contention that section 105-130.8(a)(5) must be read as limiting "income not taxable" to include only the two categories of income specifically identified therein. Because it is undisputed that the Dividends fall into neither category, Graybar contends that summary judgment was appropriately entered in its favor.

27.    "In matters of statutory construction, our primary task is to ensure that the purpose of the legislature, the legislative intent, is accomplished." *Elec. Supply Co. v. Swain Elec. Co.*, 328 N.C. 651, 656, 403 S.E.2d 291, 294 (1991). The General Assembly's intent "is first ascertained from the plain words of the statute." *Id.*

28.    Applying this standard, the Court concludes that section 105-130.8(a)(5) is exemplary—not exclusive or exhaustive. As noted by the OAH, "the language of

§ 105-130.8(a)(5) does not contain any indicia that the General Assembly intended that section to be an exhaustive list of all types of income that would be considered as 'income not taxable.'" (R. at 11.) Indeed, the statute's plain words do not purport to provide a complete list or otherwise limit "income not taxable" to only the types of income referenced therein. It does not use words or phrases like "means," "shall mean," "exclusively," "solely," "only," or "limited to," and instead simply declares that two types of income "shall be considered as income not taxable." N.C. Gen. Stat. § 105-130.8(a)(5); *see Pipe Line Cases*, 234 U.S. 548, 559–60 (1914) (interpreting statutory phrase "shall be considered" as not narrowing statute's reach); *Lynch v. PPG Indus.*, 105 N.C. App. 223, 225, 412 S.E.2d 163, 165 (1992) ("The statutory language, 'include but not be limited to,' clearly indicates, however, that the legislature did not intend an exclusive list."); *cf. Evans v. Diaz*, 333 N.C. 774, 779–80, 430 S.E.2d 244, 246–47 (1993) (finding "a long and specific list" that was "obviously intended to be" exhaustive to constitute a complete list).

29. Moreover, had the legislature intended the statute to be exclusive, it could have done so.[3] This is especially true in light of the North Carolina Supreme Court's

---

[3] The language chosen in other subsections within section 105-130.8 suggests that the General Assembly did not intend for section 105-130.8(a)(5) to contain an exhaustive list. "When a legislative body includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that the legislative body acts intentionally and purposely in the disparate inclusion or exclusion." *N.C. Dep't of Revenue v. Hudson*, 196 N.C. App. 765, 768, 675 S.E.2d 709, 711 (2009) (internal quotation marks, alteration, and citation omitted). While the General Assembly provided a clearly exhaustive definition for "net economic loss," *see* N.C. Gen. Stat. § 105-130.8(a)(2) ("The net economic loss for any year *means* the amount by which allowable deductions for the year other than prior year losses exceed income from all sources in the year including any income not taxable under this Part." (emphasis added)), the same cannot be said of section 105-130.8(a)(5).

decision in *Dayco Corp. v. Clayton*, 269 N.C. 490, 153 S.E.2d 28 (1967), a decision issued four months before section 105-130.8 was enacted that addressed the meaning of "income not taxable" for purposes of the substantially similar NEL provisions in the predecessor statute. *Id.* at 497–98, 153 S.E.2d at 33; *see Kornegay Family Farms LLC v. Cross Creek Seed, Inc.*, 370 N.C. 23, 29, 803 S.E.2d 377, 381 (2017) ("[T]he legislature is always presumed to act with full knowledge of prior and existing law and . . . where it chooses not to amend a statutory provision that has been interpreted in a specific way, we may assume that it is satisfied with that interpretation." (quoting *Polaroid Corp. v. Offerman*, 349 N.C. 290, 303, 507 S.E.2d 284, 294 (1998))).

30.     In *Dayco*, our Supreme Court considered whether dividend income allocable to states other than North Carolina constituted "income not taxable" for State income tax purposes under N.C. Gen. Stat. § 105-147(9)(d) (repealed 1967), the substantially similar predecessor statute to section 105-130.8.[4] *Dayco Corp.*, 269 N.C. at 497, 153 S.E.2d at 32–33. The Supreme Court concluded that because such income is not allocable to North Carolina, it is not subject to tax by North Carolina. *Id.* at 498, 153

---

[4] N.C. Gen. Stat. § 105-147(9)(d) provided, in relevant part, as follows:

> Any net economic loss of a prior year or years brought forward and claimed as a deduction in any income year may be deducted from taxable income of the year only to the extent that such carry-over loss from the prior year or years shall exceed any income not taxable under this article received in the same year in which the deduction is claimed, except that in the case of taxpayers required to apportion to North Carolina their net apportionable income, as defined in this article, only such proportionate part of the net economic loss of a prior year shall be deductible from the income taxable in this State as would be determined by the use of the apportionment ratio computed under the provisions of G.S. 105-134 or of subsection (c) of G.S. 105-142, as the case may be, for the year of such loss.

N.C. Gen. Stat. § 105-147(9)(d)(3) (repealed 1967).

S.E.2d at 33. The taxpayer argued that even though this income was not taxed by North Carolina, it was subject to tax in other states and thus was taxable income. *Id.* at 497, 153 S.E.2d at 33. The Supreme Court disagreed, concluding that "'taxable income' clearly means income on which the State of North Carolina, by the Revenue Act, levies a tax" and that "[a]ll other income is 'income not taxable.'" *Id.* at 498, 153 S.E.2d at 33; *see also Aberfoyle Mfg. Co. v. Clayton*, 265 N.C. 165, 171–73, 143 S.E.2d 113, 118–19 (1965) (holding that a liquidating distribution, while not taxable income, was nonetheless "income not taxable" because it increased the corporation's assets and was not taxed by the State).

31. Applying the definition set forth in *Dayco*, the Court concludes that the Dividends Graybar received are "income not taxable" under section 105-130.8(a)(3). Graybar deducted the Dividends from its gross income pursuant to the Code's DRD, and the Dividends were thus excluded from Graybar's federal taxable income and, consequently, its State net income. As a result, the Dividends were not income upon which the State levied a tax.

32. In its Final Decision, the OAH distinguished *Dayco* on the ground that it applied to dividend income allocable to other states, not, as here, dividend income apportioned to North Carolina. The Court disagrees with the OAH's interpretation of *Dayco*. By clearly defining "income not taxable" under a substantially similar statute as income on which the State does not levy a tax, the Supreme Court has, at a minimum, offered persuasive authority and forecast its view of the proper

interpretation of "income not taxable" under section 105-130.8(a)(3) and, at most, provided the rule of decision in this case.

33. When interpreting tax statutes, any "ambiguities . . . are resolved in favor of taxation." *Home Depot U.S.A., Inc. v. N.C. Dep't of Revenue*, 2015 NCBC LEXIS 103, at *19 (N.C. Super. Ct. Nov. 6, 2015) (quoting *Aronov v. Sec'y of Revenue*, 323 N.C. 132, 140, 371 S.E.2d 468, 472 (1988)). Although the Court does not find section 105-130.8 to be ambiguous, should the Supreme Court decide otherwise, this Court notes that its statutory interpretation limiting "income not taxable" to the two categories listed in subsection 105-130.8(a)(5) will permit a broader range of income to offset NEL deductions, a result in favor of taxation. *See Bodford v. N.C. Dep't of Revenue*, 2013 NCBC LEXIS 18, at *13 (N.C. Super. Ct. Apr. 10, 2013) ("The court is to construe strictly any statute providing for a deduction and resolve ambiguities in favor of taxation.").

34. The OAH also rested its conclusion on the fact that the Dividends were "deductions," rather than "exclusions," stating that because "[n]o exemption or exclusion prevented the Dividends from being included in income on either the federal or North Carolina returns[,] . . . the Dividends are not 'income not taxable.'" (R. at 19.) The OAH concluded, and Graybar argues here, that "income not taxable" under section 105-130.8 should be read to mean income items excluded from gross income altogether (i.e., items that were never within the State's authority to tax) and does not include income that the State had the authority to tax, including items first

included in, and then removed from, gross income by the claiming of a deduction (like the Dividends here).

35. The OAH's focus on the Dividends' status as "deductions" and not "exclusions" is misplaced. Under *Dayco*, the determinative issue is whether the State actually levied a tax on the item of income, not whether the State had the authority to do so. The Dividends were deducted from Graybar's federal taxable income pursuant to the DRD and were not included in its State net income. Because the Dividends are income on which the State did not levy a tax, the Dividends were "income not taxable" under section 105-130.8(a)(3).

36. The Court finds further support for its conclusion in the stated policy aims motivating the passage of section 105-130.8. *See Elec. Supply Co.*, 328 N.C. at 656, 403 S.E.2d at 294 ("Courts also ascertain legislative intent from the policy objectives behind a statute's passage and the consequences which would follow from a construction one way or another." (internal quotation marks omitted)). As expressed in the statute, the NEL provisions were intended to address a corporation's "net economic situation" in order to provide relief to corporations that "incurred economic misfortune." N.C. Gen. Stat. § 105-130.8(a)(1). The Court concludes that the legislature likely did not intend for over $14,000,000 in allocable income to be disregarded in determining a corporation's "net economic situation" for purposes of providing relief based on a corporation's "economic misfortune." *See Aberfoyle Mfg. Co.*, 265 N.C. at 172, 143 S.E.2d at 119 (reducing NEL deduction where liquidating distribution increased taxpayer's assets by over $4,000,000).

37.     The Court's conclusion is also buttressed by the Department's published guidance.  The Department is required to administer the State's tax laws.  N.C. Gen. Stat. § 143B-219.  The Secretary of Revenue (the "Secretary") is authorized to publish guidance and bulletins interpreting the laws administered by the Department.  N.C. Gen. Stat. § 105-264.  The Supreme Court of North Carolina has explained that "[a]n interpretation by the Secretary is *prima facie* correct" and that the Secretary's interpretation of "the relevant statutory language is important and must be given 'due consideration.'"  *Midrex Techs.*, 369 N.C. at 260, 794 S.E.2d at 793; *see Carolina Photography, Inc. v. Hinton*, 196 N.C. App. 337, 339, 674 S.E.2d 724, 725 (2009) ("A rule, *bulletin*, or directive promulgated by the Secretary of Revenue which interprets [laws administered by the Department] is *prima facie* correct[.]" (emphasis added)).

38.     During the years at issue here, the Secretary published a series of bulletins interpreting section 105-130.8 and, in particular, the meaning of "income not taxable" under the statute (the "Bulletins").  (*See* R. at 735–52.)  In particular, the Bulletins for taxable years 2007 and 2008 define "income not taxable" as "any income that has been deducted in computing State net income under G.S. 105-130.5, any nonapportionable income that has been allocated directly to another state under G.S. 105-130.4, and *any other income* that is not taxable under State law.  (*See Dayco Corporation v. Clayton*.)."  (R. at 738 (emphasis added).)  Thus, in addition to

referencing the two categories of income identified in section 105-130.8(a)(5), the Bulletins also explicitly referenced, and adopted the holding in *Dayco*.

39. Although the OAH found that the Bulletins were "entitled to some deference," the OAH concluded, and Graybar argues here, that the Bulletins are not controlling and misinterpret section 105-130.8.[5] (R. at 11.) Graybar contends that the Court should instead rely upon a 1965 opinion of the North Carolina Attorney General. That opinion, which was issued two years before the Supreme Court's *Dayco* decision, opined that the interpretation of "income not taxable" depended on the "distinction between income excludable from gross income and income deductible from gross income." (Resp't's Br. Ex. 1 [hereinafter "AG Opinion"], ECF No. 30.) The Attorney General concluded:

> [s]ince interest and dividends are both items of gross income subject to taxation . . . , all such income would be considered TAXABLE INCOME notwithstanding the fact that a portion of such interest and dividends may qualify as deductions from gross income . . . in determining the taxpayer's net taxable income.

(AG Opinion 3.) As Graybar points out, other states have followed this same approach. *See Rosemary Props., Inc. v. McColgan*, 177 P.2d 757, 763 (Cal. 1947) ("Since the gross income and specified deductions are the factors included in arriving at the net income, the conclusion is unavoidable that it is gross income that is included in the measure of the tax."); *Yaeger v. Dubno*, 449 A.2d 144, 147 (Conn. 1982)

---

[5] The OAH concluded that the Department's reliance on the Bulletins was misguided because (i) the Dividends were not "income not taxable" under *Dayco* (i.e., because *Dayco* involved dividend income allocable to other states), (ii) in any event, section 105-130.8(a)(5) provided a "statutory definition" of "income not taxable" that does not encompass the Dividends, and (iii) the Bulletins did not give notice that a DRD deduction "converts taxable dividends into 'income not taxable.'" (R. at 11–12.)

(concluding "'dividends taxable for federal income tax purposes' means gross dividends as defined under Code, without regard to federal adjustments").

40. Upon careful review, however, the Court concludes that the Attorney General's opinion is of limited value here, particularly when compared to the Department's Bulletins, because the opinion was issued before the Supreme Court's decision in *Dayco*. Indeed, the Court's research has not disclosed, and Graybar has not cited, any judicial or administrative decisions relying upon the Attorney General's opinion. Moreover, while the Department's Bulletins are presumed to be *prima facie* correct, *see Carolina Photography, Inc.*, 196 N.C. App. at 339, 674 S.E.2d at 725, the Attorney General's opinion on tax matters is merely advisory, *see In re Va.-Carolina Chem. Corp.*, 248 N.C. 531, 538, 103 S.E.2d 823, 828 (1958), and our appellate courts have admonished that "[w]hile opinions of the Attorney General are entitled to 'respectful consideration,' such opinions are not compelling authority[,]" *McLaughlin v. Bailey*, 240 N.C. App. 159, 167–68, 771 S.E.2d 570, 577 (2015) (quoting *Williams v. Alexander Cty. Bd. of Educ.*, 128 N.C. App. 599, 602, 495 S.E.2d 406, 408 (1998)). As a result, the Court concludes that, as between the two, the Department's guidance, rather than the Attorney General's opinion, is the more persuasive and further supports the Court's conclusion that the Dividends Graybar received constituted "income not taxable" for purposes of section 105-130.8.

41. Finally, the OAH found, and Graybar argues here, that the Bulletins did not provide the public with notice of the Department's interpretation that dividends deducted under the DRD are "income not taxable" for purposes of section 105-

130.8(a)(3). The Court disagrees. The Department's Bulletins interpreting the NEL provision explicitly state that "income not taxable" includes "any other income that is not taxable under State law" and cite *Dayco* for support. Because *Dayco* provides that "income not taxable" includes any income on which the State does not levy a tax, the Court concludes that the Bulletins afforded the public, including Graybar, adequate notice of the Department's interpretation.[6]

42.     For each of these reasons, therefore, the Court concludes that the Dividends deducted pursuant to the DRD, I.R.C. § 243(a)(3), are "income not taxable" under section 105-130.8(a)(3), that Graybar has failed to bring itself within the statutory provisions authorizing the NEL deduction calculation it seeks, and that the OAH's contrary conclusion should be reversed.

B.     Constitutionality

43.     In light of the OAH's determination that the Dividends were not "income not taxable" for purposes of section 105-130.8, the OAH concluded that it was "not necessary to rule on [Graybar's] constitutional argument." (R. at 18.) Nevertheless,

---

[6] Graybar also points to case law holding that where the only authority for an agency's interpretations of the law is its litigation position in a particular case, "that interpretation may be viewed skeptically on judicial review." *See Cashwell v. Dep't of State Treasurer, Ret. Sys. Div.*, 196 N.C. App. 80, 89, 675 S.E.2d 73, 78 (2009) (quoting *Rainey v. N.C. Dep't of Pub. Instruction*, 361 N.C. 679, 681, 652 S.E.2d 251, 252 (2007)). The Bulletins at issue here, however, were published for the 2007 and 2008 tax years, seven years before the Department conducted its audit and seven years before Graybar formally requested a review of the Department's proposed assessments. In fact, this same interpretation appears in Bulletins dating back to at least 1999. (*See* R. at 751–52.) Graybar's argument on this point is thus unpersuasive. *See Cashwell*, 196 N.C. App. at 89, 675 S.E.2d at 78 ("[I]f the agency's interpretation of the law is not simply a 'because I said so' response to the contested case, then the agency's interpretation should be accorded . . . deference[.]" (quoting *Rainey*, 361 N.C. at 681, 652 S.E.2d at 252–53)).

the OAH noted its agreement with Graybar's contention that "the Department's position creates a double taxation on the same income" in violation of the North Carolina Constitution's Just and Equitable Clause. (R. at 18.) Graybar agrees with this conclusion and argues in addition that this alleged double taxation violates the Law of the Land Clause in the North Carolina Constitution and the Due Process Clause contained in the Fourteenth Amendment of the United States Constitution. (*See* Resp't's Br. 20–22.) The Court concludes that these applied constitutional challenges are properly before the Court for determination. *See* N.C. Gen. Stat. § 150B-51(d) ("In reviewing a final decision allowing . . . summary judgment, the court may enter any order allowed by . . . Rule 56.").

44. As an initial matter, our appellate courts have held that "[a] law is presumed constitutional until the contrary is shown and the burden is on the party claiming that the law is unconstitutional to show why it is unconstitutional as applied to him." *Perry v. Perry*, 80 N.C. App. 169, 176, 341 S.E.2d 53, 58 (1986).

45. The Just and Equitable Clause of the North Carolina Constitution provides that "[t]he power of taxation shall be exercised in a just and equitable manner[.]" N.C. Const. art. V, § 2(1). The provision operates to limit the State's taxing power and protects the public against abusive tax policies. *IMT, Inc. v. City of Lumberton*, 366 N.C. 456, 461–62, 738 S.E.2d 156, 159 (2013). The tension between the State's constitutional authority to tax and the Just and Equitable Clause "must be resolved in a manner that protects the citizenry from unjust and inequitable taxes while preserving legislative authority to enact taxes without exposing the State or its

subdivisions to frivolous litigation." *Id.* at 461, 738 S.E.2d at 159. In determining whether a tax is just and equitable, courts should look to factors such as, among others, whether the tax was uniformly applied, exemptions from alternative taxes, and the size of the taxing jurisdiction. *Id.* at 461–62, 738 S.E.2d at 159–60 (citing *Nesbitt v. Gill*, 227 N.C. 174, 179–80, 41 S.E.2d 646, 650–51 (1947)).

46. Challenges under the Just and Equitable Clause must be determined on a case-by-case basis, *id.* at 463, 738 S.E.2d at 160, and legislative action "will not be held invalid as violative of the Constitution unless it so appears beyond a reasonable doubt[,]" *Nesbitt*, 227 N.C. at 181, 41 S.E.2d at 651. "And when there is reasonable doubt as to the validity of a statute, such doubt will be resolved in favor of its constitutionality." *Id.* "The 'power of taxation is very largely a matter of legislative discretion' and . . . 'in respect to the method of apportionment as well as the amount, it only becomes a judicial question in cases of palpable and gross abuse.'" *Smith v. City of Fayetteville*, 220 N.C. App. 249, 256, 725 S.E.2d 405, 411 (2012) (quoting *E. B. Ficklen Tobacco Co. v. Maxwell*, 214 N.C. 367, 372, 199 S.E. 405, 409 (1938)).

47. The Law of the Land Clause provides that "[n]o person shall be denied the equal protection of the laws," and shall not be "taken, imprisoned, or disseized of his freehold, liberties, or privileges, or outlawed, or exiled, or in any manner deprived of his life, liberty, or property, but by the law of the land." N.C. Const. art. I, § 19. Our courts have held that the clause is "interpreted to be analogous with the [United States Constitution's] Fourteenth Amendment 'due process of law' clause." *City of Asheville v. State*, 192 N.C. App. 1, 44, 665 S.E.2d 103, 133 (2008). "These clauses

have been consistently interpreted to permit the state, through the exercise of its police power, to regulate economic enterprises provided the regulation is rationally related to a proper governmental purpose." *Id.* Accordingly, the Court's analysis of the Law of the Land Clause and the Due Process Clause for present purposes diverges into a two-fold inquiry: "(1) Does the regulation have a legitimate objective? and (2) If so, are the means chosen to implement the objective reasonable?" *Id.*

48. Here, the OAH concluded, and Graybar argues now, that the substantial Dividend paid to Graybar by Graybar Services was subject to double taxation because Graybar Services paid taxes on the earnings and profits from which it paid the Dividend to Graybar and thereafter the State taxed these same monies by determining the Dividend to be "income not taxable" under the NEL provision.[7]

---

[7] It is worth noting that Graybar, Graybar Services, and Commonwealth are all structured as "C" corporations for federal income tax purposes and that "double taxation" is a common, widely accepted, and permissible feature of this form of business organization. As explained by one federal circuit court:

> A C corporation is a corporate entity that is required to pay taxes on the income it earns. If a C corporation decides to issue dividends to its shareholders, the shareholders must pay income tax on these dividends. This arrangement exposes shareholder dividends to double taxation—a C corporation's income is taxed at the corporate level and the portion of the C corporation's income that is passed on to shareholders is taxed again at the shareholder level.

*Crumpton v. Stephens*, 715 F.3d 1251, 1253 n.2 (11th Cir. 2013); *see Crowder Constr. Co. v. Kiser*, 134 N.C. App. 190, 194, 517 S.E.2d 178, 182 (1999) ("As a 'C' corporation, the Company paid corporate income tax on its earnings, and its shareholders paid income taxes on any dividends received by them.").

The DRD permits a corporation to deduct the dividends it receives from a subsidiary to avoid double taxation in this context. The policy considerations motivating the DRD deduction, however, are different from those justifying an NEL deduction. *Compare* H.R. Rep. No. 708, 72d Cong., 1st Sess., 12 (1932) (legislative history of 26 U.S.C. § 243(a)(1) reflecting a Congressional policy against double taxation of income by permitting dividends received deductions to corporations on "the theory that a corporate tax has already been paid

49. Notably, it has long been held that nothing in either the United States Constitution or the North Carolina Constitution prevents the State from imposing double taxation, provided the tax is imposed without arbitrary distinctions. *See, e.g.*, *Illinois C. R. Co. v. Minnesota*, 309 U.S. 157, 164 (1940) ("[T]he Fourteenth Amendment no more forbids double taxation than it does doubling the amount of a tax; short of confiscation or proceedings unconstitutional on other grounds." (internal quotation marks omitted)); *Jamison v. Charlotte*, 239 N.C. 682, 693–94, 80 S.E.2d 904, 913 (1954) (citing North Carolina cases to similar effect); *see also, e.g.*, *Swiss Oil Corp. v. Shanks*, 273 U.S. 407, 413 (1927) ("[T]he Fourteenth Amendment does not require uniformity of taxation, nor forbid double taxation." (citations omitted)); *Charlotte Coca-Cola Bottling Co. v. Shaw*, 232 N.C. 307, 309, 59 S.E.2d 819, 821 (1950) ("Double taxation, as such, is not prohibited by the Constitution, and is not invalid if the rule of uniformity is observed."); *Sabine v. Gill*, 229 N.C. 599, 603, 51 S.E. 2d 1, 3 (1948) ("[D]ouble taxation, even within the State, is not *ipso*

---

upon the earnings out of which the dividends are distributed"), *with* N.C. Gen. Stat. § 105-130.8(a)(1) (affording relief for corporations suffering "economic misfortune" based on "net economic situation of the corporation"), *and Aberfoyle Mfg. Co.*, 265 N.C. at 171, 143 S.E.2d at 118 ("The General Assembly was under no constitutional or other legal compulsion to permit a net economic loss or losses deduction for a corporation from taxable income in a subsequent year or years. It enacted the carry-over provisions of [the predecessor statute] purely as a matter of grace, gratuitously conferring a benefit but limiting such benefit to the net economic loss of the taxpayer after deducting therefrom the allocable portion of such taxpayer's nontaxable income." (internal quotation marks omitted)).

*facto* necessarily obnoxious to the Constitution when the intention to impose it is clear and it is free from discriminatory features, however odious to the taxpayer.").

50.     Here, assuming without deciding that the State's determination concerning "income not taxable" results in double taxation,[8] the Court concludes that Graybar has failed to show that its tax burden resulting from the State's determination—i.e., the reduction of Graybar's NEL deductions by the apportioned amount of the Dividends received—is the product of discriminatory or arbitrary taxation or otherwise derives from an abusive or unreasonable taxation scheme in violation of the North Carolina or United States Constitution.  The Department's interpretation of "income not taxable" is based on the Supreme Court's holding in *Dayco*, a holding the legislature elected not to overturn or modify in its 1967 statutory amendment, and a position the Department has publicly announced and implemented for at least twenty years, including during the taxable years at issue.  There is no evidence that the Department's interpretation has been applied inconsistently, arbitrarily, or discriminatorily or that the Department has identified Graybar for adverse treatment relative to other similarly situated taxpayers.  Moreover, the Department's interpretation is reasonable and consistent with section 105-130.8's legitimate and stated purpose "to grant some measure of relief to the corporation that has incurred

---

[8]  The parties dispute whether the Department's treatment has resulted in double taxation. Graybar argues that the income from which the larger Dividend was paid was taxed twice, first when it was earned by Graybar's subsidiary, Graybar Services, and again when the Graybar could not offset its NEL deduction by that Dividend.  The Department argues that the Dividend income was not initially taxed to Graybar because Graybar Services, which filed separately from Graybar, paid corporate income tax on the Dividend, not Graybar, and that the Dividend, once received by Graybar, was not taxed.  The Court need not resolve this dispute to determine Graybar's constitutional challenges.

economic misfortune" and to afford that relief based on the "net economic situation of the corporation." N.C. Gen. Stat. § 105-130.8(a)(1).

51. In short, the Department's interpretation does not cause section 105-130.8 to be unfair, unreasonable, arbitrary, or abusive, and Graybar's constitutional challenges must therefore be rejected. *See Aronov*, 323 N.C. at 136–39, 371 S.E.2d at 470–72 (holding that requiring a taxpayer to reduce North Carolina carryover losses by non-North Carolina income did not violate the Due Process Clause or the Law of the Land Clause, in part, because "[d]eductions are privileges, not rights"); *cf. IMT, Inc.*, 366 N.C. at 462, 738 S.E.2d at 160 (holding unconstitutional a 59,900% minimum tax increase for promotional sweepstake companies).

IV.

CONCLUSION

52. Based on the foregoing, the Court hereby **REVERSES** the Final Decision and **REMANDS** with instructions to the OAH to enter summary judgment in favor of the Department.

**SO ORDERED**, this the 9th day of January, 2019.

/s/ Louis A. Bledsoe, III
Louis A. Bledsoe, III
Chief Business Court Judge